The appellant, Chester Earl Collins, was convicted of felony murder and was sentenced to 30 years in prison.
The state's evidence tended to show that on September 7, 1990, an investigator with the Tuscaloosa Police Department discovered the body of a woman in a driveway on 34th Avenue in Tuscaloosa, Alabama. She was partially clothed and her skirt was lifted high on her legs. An autopsy revealed that she had died within five minutes after receiving a single gunshot wound to her abdomen. Semen was discovered in the victim's mouth, rectum, and vagina.
Investigators found a wallet belonging to the co-defendant, Willie Hawkins, at the crime scene. Herman Wright, a witness to some of the activities on the evening of the victim's death, directed police to the house of one of the appellant's relatives, where the appellant and Willie Hawkins had spent the previous night.
When the investigators arrived at the house, Hawkins answered the door. His clothing was covered in bloodstains. He was placed in custody, and then told the arresting officers that the appellant was also in the house. When the appellant came to the door, he was asked if there was a gun in the house. He responded "yes," and pointed to a pair of tennis shoes located near the doorway to the house. Officers later recovered a .22 caliber revolver from one of the shoes. The appellant was detained. Blood was discovered on his undershorts that were protruding from the top of the pants he was wearing. The appellant was also placed in custody.
Mr. Wright testified that he saw the appellant and Hawkins having sex with the victim. He also saw the appellant shoot his gun towards a wooded area.
The appellant testified in his own behalf. He gave a rambling narrative, which he apparently thought was exonerating, but which was actually incriminating. He stated that on the day of the murder he and Hawkins were looking for someone to have sex with. The appellant testified that on that day he was armed with a .22 caliber pistol. According to the appellant, he and Hawkins "went around town" for awhile and then separated. Later, the appellant said that he learned that Hawkins was at the victim's mobile home. He went to the victim's mobile home, where he heard moaning and the sounds of a struggle coming from inside. According to the appellant's version of the occurrence, when he entered the mobile home, he saw Hawkins and the victim having sex on the floor. He said that Hawkins got up and told the victim to have sex with the appellant. The appellant stated that before the victim had sex with him, she said "Don't let him hurt me." He said that they both had sex with the victim several more times, after which they all then went outside of the mobile home. The appellant then claimed that he shot his gun "toward a house." He said that the victim was standing "next to a pole" at the time. The appellant then testified that Hawkins admitted to shooting the victim. A firearms and toolmarks examiner testified that he had compared the bullet removed from the victim to a test bullet fired from the appellant's gun. He could not positively say that the appellant's gun had fired the bullet that killed the victim, but he also stated that he could not positively say that the appellant's gun had not fired the fatal bullet.
 I
The appellant initially contends that there was insufficient evidence to find him guilty of felony murder. Specifically, he contends that there was insufficient evidence to find him guilty of the underlying felony of rape because, he says, he presented evidence that the victim consented. Section 13A-6-2, Code of Alabama 1975, states, in pertinent part:
 "(a) A person commits the crime of [felony] murder if:
". . . .
 "(3) He commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or *Page 501 
any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime he is committing or attempting to commit, or in the immediate flight therefrom, he, or another participant if there be any, causes the death of any person."
(Emphasis added.)
Here, the majority of the evidence against the appellant was circumstantial. Circumstantial evidence can be sufficient to sustain a conviction in conjunction with other facts and circumstances that tend to connect the accused with the crime.Scanland v. State, 473 So.2d 1182 (Ala.Cr.App.), cert. denied,474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985). A crime need not be proved by direct or positive testimony. " 'Circumstantial evidence may afford satisfactory proof of the corpus delicti, and, if facts are presented from which a jury may reasonably infer that a crime has been committed, the question of the defendant's guilt or innocence must be submitted to the jury.' " Limbaugh v. State, 581 So.2d 5, 10
(Ala.Cr.App. 1991) (quoting Carroll v. State, 440 So.2d 1168,1170 (Ala.Cr.App. 1983). In considering a sufficiency issue, a reviewing court views the evidence in the light most favorable to the State. Colvette v. State, 568 So.2d 319
(Ala.Cr.App. 1990).
The appellant's in-court testimony placed him with the victim and with Willie Hawkins, whose wallet was found near the victim's body. The appellant was found with Hawkins the morning after the victim had been shot. Both the appellant and Hawkins had blood on their clothing. The appellant admitted that, at the time of the murder, he owned and carried the same caliber gun as the gun used to kill the victim.
There was sufficient evidence from which the jury could find the appellant guilty of the underlying felony of rape. The jury was free to infer from the evidence presented that the victim had not consented to have sex with the appellant and Hawkins prior to her death. Jenkins v. State, [Ms. 90-1044, February 28, 1992], 1992 WL 71035 (Ala.Cr.App. 1992). The position of the body, the lack of clothing on the victim, the semen found in her mouth, rectum, and vagina, all permit a conclusion that the victim was forced to have sex with the appellant and Hawkins. The jury was free to accept or to reject all or any part of the appellant's testimony. The verdict is supported by the evidence presented at trial.
 II
The appellant's next contention is that the trial court erred in receiving into evidence a videotaped statement he made to police officers. Specifically, he contends that his statement was not voluntary because he was coerced by comments made by the interrogating officer that it would be better for him if his story matched that of his co-defendant. Further, he contends that the interrogating officer's remarks coerced him into changing his version of the facts.
The trial court held a hearing outside the presence of the jury, on the issue of the voluntariness of the appellant's statement. Two officers testified that the appellant had voluntarily waived his Miranda rights and that he had not been coerced into making a statement. At the hearing, the appellant did not offer any testimony that the statement was coerced but argued that there was a question as to his ability to understand his rights because of his alleged limited mental ability. The court found that the appellant "knowingly and intelligently waived his rights" and that the statement was voluntary. The trial court's ruling is supported by the record. "Where the trial judge finds on conflicting evidence that the confession was voluntarily made, its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence." Williams v. State,456 So.2d 852, 855 (Ala.Cr.App. 1984). The appellant's statement was correctly received into evidence.
 III
The appellant also asserts that reversible error occurred when his videotaped statement *Page 502 
was viewed a second time by the jury after the jury began its deliberations, contending that this second viewing unduly emphasized on the appellant's videotaped statement. Specifically, he contends that the manner in which the tape was received prejudiced him.
The decision to allow the jury to rehear testimony rests with the trial judge. Fitchard v. State, 424 So.2d 674
(Ala.Cr.App. 1982); Hammes v. State, 417 So.2d 594
(Ala.Cr.App. 1982); Martin v. State, 504 So.2d 335
(Ala.Cr.App. 1986). See also United States v. Sims, 719 F.2d 375
(11th Cir. 1983), cert. denied, 465 U.S. 1034, 104 S.Ct. 1304,79 L.Ed.2d 703 (1984). "All instruments of evidence and depositions read to the jury may be taken out by them on their retirement." § 12-16-14, Code of Alabama 1975. See also C. Gamble, McElroy's Alabama Evidence § 10.04 (4th ed. 1991).
During its deliberations, the jury was free to examine any piece of evidence received during the trial, including the videotape. During trial, however, a short segment of the videotape had been intentionally deleted from the jury's viewing. Both counsel for the appellant and for the state stipulated to the deletion. This deletion made it impossible to send the videotape to the jury room for the jury's independent second viewing. The trial judge, realizing this, stated:
 "THE COURT: I think rather than send you all back to the jury room — if we do that, we are going to have to set it up here. You will recall that during the viewing process that it became necessary to stop the tape at one point and then start it back up. So, I couldn't just send you all back with the television monitor and the tape and say, 'Watch it.' I would need to have [the prosecutor] go through that same process and monitor it and stop it at the appropriate point."
It was out of necessity that the trial judge recalled the jury to watch the videotape. Counsel for the appellant objected to the second viewing of the videotape, but did not request a cautionary instruction or request that other testimony be repeated so as not to give undue prominence to the videotape, as allowed by Rule 22.2, A.R.Crim.P.
The trial judge committed no error by permitting the jury to watch the videotape a second time and by monitoring that viewing.
 IV
Last, the appellant contends the trial judge erred in recharging the jury on "manslaughter," a felony, when it had requested a recharge only on "criminally negligent homicide," a misdemeanor.
During deliberations, the jury requested the trial judge to recharge it as to "criminally negligent homicide." The trial judge obliged with a lengthy and thorough explanation of "criminally negligent homicide." During this charge, the trial judge compared "criminally negligent homicide" to "manslaughter." The trial judge gave the following reasons for this dual comparison:
 "THE COURT: Ladies and gentlemen, at the conclusion of yesterday's session of court, you had submitted to me a request that I recharge you as to criminally negligent homicide, which I am prepared to do today. I think the best way to put that into some perspective or to give you an opportunity to better absorb the elements or the ingredients of that charge as I'm going to describe it to you as to criminally negligent homicide and manslaughter, which I previously charged you, because basically those two offenses track each other step by step as far as the elements, except there is one difference. I want to make that difference plain to you. It helps you understand criminally negligent homicide better, I think, if I put it in contrast to manslaughter."
Following the trial judge's recharge, the appellant's counsel objected to giving explanations of both terms:
 "Your Honor, for the record I would like to object to the charge on manslaughter since the jury question was only for the *Page 503 
definition of criminally negligent homicide and not for manslaughter."
The court responded:
 "THE COURT: Well, in that regard let me simply say further, when I met with you in advance of getting that charge, I advised you that I was going to give both, and my understanding at that point was that you stated that you understood why I would be doing that. I really understood from your comments that you had no objection. In fact, I think you said 'I would have no objection to that being done.' Certainly you have the prerogative to make that objection at this point."
No other objections were made.
The appellant now alleges that it was error for the trial judge to give the additional instruction on "manslaughter." Specifically, he alleges that such an additional explanation of "manslaughter," a felony, gave the jury the impression that the trial judge believed that a felony conviction was warranted.
As a general rule, "[w]hen a jury requests additional instructions the recommended practice is for the trial court to remain within the area of the specific request in making his response." East v. State, 339 So.2d 1104, 1106-107
(Ala.Cr.App. 1976); see also Davis v. State, 440 So.2d 1191
(Ala.Cr.App. 1983), cert. denied, 465 U.S. 1083, 104 S.Ct. 1452,79 L.Ed.2d 770 (1984).
However, the trial court " 'is not confined strictly to the point presented by the jury, but may in its discretion go beyond such point, provided the jury are not thereby misled to the prejudice of the accused.' " Bell v. State, 473 So.2d 622,624 (Ala.Cr.App. 1985), quoting 23A C.J.S. Criminal Law § 1376(d)(1) (1961). Further, Rule 22.2, A.R.Crim.P., states:
 "After the jurors have retired to consider their verdict, if they request to have any testimony repeated, or if they or any party requests additional instructions, the court may recall the jurors to the courtroom and order the testimony read or give appropriate additional instructions.
The court may also order other testimony read or give other instructions, so as not to give undue prominence to the particular testimony or instructions requested. Such testimony may be read or such instructions given only after notice to the parties.
(Emphasis added.)
Contrary to the appellant's contentions, it was not error for the trial judge to give the supplemental instructions on manslaughter.
The appellant also contends that it was reversible error for the judge not to admonish the jury to consider the supplemental instructions in connection with the original charge. "It is assumed that the jury will consider the previously given instructions along with those given in the supplemental charge." Brannon v. State, 549 So.2d 532, 542
(Ala.Cr.App. 1989), quoting Davis v. State, 440 So.2d at 1195. There was no error on the part of the trial court.
For the foregoing reasons, the judgment in this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.