The appellant, Eugene Abernathy, was convicted of disseminating obscene material. Section 13A-12-200.3, Code of Alabama 1975. The jury found him not guilty of the offense of harassing communications. After a sentencing hearing, the trial court sentenced the appellant to one year's imprisonment, and that sentence was split and he was ordered to serve 30 days in the county jail and he was placed on 2 years' probation.
The facts adduced at trial tended to establish the following. Pamela Westrope testified that on October 10, 1991, she found two sheets of paper in her mailbox. She stated that the sheets contained what she described as "alarming" pictures and references to scripture. She testified that one of the pictures was of the appellant and beneath the picture were the words "Jesus. Arrest and conviction. Rejection at Nazareth." One of the sheets she received on October 10, had written on it, "Sick, hell, fuck, Jehovah, Isaiah 9:13." That sheet also showed a picture of a bear apparently defecating and a sex organ had been drawn on the bear. Westrope testified that over a period of time she had received approximately 100 sheets similar to the ones she received on October 10, 1991. Westrope's husband, Jeffrey Westrope, testified that he saw the sheets delivered to his house on October 10, 1991. He stated that he found the materials to be offensive and that he felt his family's safety was threatened.
Patricia Conklin testified that on the morning of October 10, 1991, she was walking her child to the school bus and at the end of her driveway beside the mailbox she found a sheet of paper lying face up. She testified that on the sheet was a photograph of humans engaging in what she described as "dirty sex." Conklin testified that she found the photograph revolting and that it made her feel sick.
Ronnie Truett, an investigator with the Madison County Sheriff's Department, testified that he investigated the complaints made by Mrs. Westrope and Mrs. Conklin. He stated that he went to the appellant's mobile home and asked the appellant if he would accompany him to the sheriff's office. The *Page 521 
appellant voluntarily drove to the sheriff's office, according to Truett. He testified that when they arrived, he told the appellant the nature of his investigation and advised the appellant of his Miranda rights. Truett stated that the appellant told him that he understood his Miranda rights and signed a waiver of rights form.
Truett stated that he questioned the appellant regarding the distribution of the sheets of paper in the neighborhood. He stated that the appellant did not answer his questions verbally; rather, the appellant wrote scripture on a piece of paper and handed the paper to Truett. According to Truett, the last question that he asked the appellant was whether the appellant, in fact, had distributed the sheets in the neighborhood. Truett stated that, in response, the appellant handed him a note, which read, "I am guilty I done it I publish it. I will bear the charges or pay the fines or go to prison." The appellant had purportedly put his name on the note. Truett stated that the entire interview with the appellant lasted about an hour.
 I
The appellant first argues that the trial court erred in denying his motion to suppress the statements made to Truett because, he says, his mental condition rendered him incapable of waiving his Miranda rights and voluntarily making his statements. We disagree. The appellant correctly notes in his brief to this Court that a confession is prima facie involuntary and inadmissible, and that the burden is upon the State to establish voluntariness and a Miranda predicate for the confession to be admissible. Jackson v. State,562 So.2d 1373 (Ala.Crim.App. 1990). In this case, there is no question that the appellant was read his Miranda rights. However, the appellant argues that his inability to waive those rights and voluntarily make any statement renders his statements inadmissible.
Whether the appellant voluntarily and knowingly waived hisMiranda rights is determined by examining the totality of the circumstances. Menefee v. State, 592 So.2d 642
(Ala.Crim.App. 1991); Lawhorne v. State, 581 So.2d 1159
(Ala.Crim.App. 1990), aff'd, 581 So.2d 1179 (Ala. 1991), cert denied, ___ U.S. ___, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991). In this case, the evidence is unrefuted that Investigator Truett read the appellant his Miranda rights and that the appellant indicated that he understood those rights and signed a waiver. The appellant voluntarily gave written notes to Investigator Truett in response to his questions.
While Dr. Lawrence Maier, a licensed psychologist, testified at the suppression hearing that the appellant suffered from persecutory delusions and that he was psychotic, he testified that the appellant has lucid moments and that many people suffering from psychoses function reasonably well on a day-to-day basis. Moreover, Dr. Maier testified that in his opinion the appellant was not mentally retarded and that he probably had a "low normal" intelligence level. He testified that most of the time the appellant thought clearly. Dr. Maier further stated that the appellant probably knew right from wrong at the time of the crime, which was the same day the appellant was questioned by the investigator. Although the burden is not upon the appellant to establish that his statements were involuntary, we note that Dr. Maier did not testify that the appellant was unable to understand hisMiranda rights.
"The level of the defendant's mental capability is merely one factor affecting the validity of a waiver of rights and the voluntariness of the confession." Wedgeworth v. State,610 So.2d 1244, 1249 (Ala.Crim.App. 1992). " 'Where the trial judge finds on conflicting evidence that the confession was voluntarily made, [his] finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence.' " Collins v. State, 611 So.2d 498, 501
(Ala.Crim.App. 1992) (quoting Williams v. State, 456 So.2d 852, 855
(Ala.Crim.App. 1984)).
After examining the totality of the circumstances and considering the testimony of Investigator Truett and the testimony of Dr. Maier, we cannot hold that the trial court's denial of the appellant's motion to suppress was error. *Page 522 
 II
The appellant argues that the trial court erred in denying his motion for a directed verdict because, he argues, the State failed to prove the elements of a prima facie case of dissemination of obscene material.
Section 13A-12-200.3, Code of Alabama 1975, in part provides: "It shall be unlawful for any person to knowingly disseminate publicly any obscene material." Therefore, the elements constituting the offense of dissemination of obscene material are that the defendant: (1) knowingly (2) disseminates publicly (3) obscene material.
As to the first element, knowledge, the State provided sufficient evidence that the appellant knowingly distributed the sheets of paper. Dr. Maier testified that in all likelihood the appellant knew right from wrong at the time of the offense. Therefore, evidence was presented that the appellant had reason to know that the material was obscene. See § 13A-12-200.1(10)a, b, and c.
As to the second element, § 13A-12-200.1(13), defines "disseminate publicly" as follows:
 "To expose, place, perform, exhibit, show or in any fashion display, in any location, public or private, any material in such a manner that the material can either be readily seen and its content or character distinguished by normal unaided vision or be physically examined, by viewing or examining the material from any public place or any place to which members of the general public are invited."
Patricia Conklin testified that the sheet was lying face up at the end of her driveway near her mailbox, which is located on a public road. The State presented sufficient evidence to establish that any member of the public could have seen the content of the sheet by normal unaided vision.
As to the third element, § 13A-12-200.1(1)a., b., and c., Code of Alabama 1975, defines "obscene" as follows:
 "a. The average person, applying contemporary community standards, would find that the material, taken as a whole, appeals to the prurient interest; and
 "b. The material depicts or describes, in a patently offensive way, sexual conduct, actual or simulated, normal or perverted; and
 "c. A reasonable person would find that the material, taken as a whole, lacks serious literary, artistic, political or scientific value."
To provide evidence which meets the definition of obscene, the State need not provide expert testimony when the material itself is admitted at trial. Holderfield v. City of Birmingham,380 So.2d 990, 992 (Ala.Crim.App. 1979), cert. denied,380 So.2d 994 (1980). In the appellant's case, the material itself was admitted at trial. There is no question that some of the materials disseminated by the appellant depicted sexual conduct. Moreover, jurors in an obscenity case are entitled to draw on their knowledge of the community or area in which they live in deciding whether the material is obscene and lacks serious literary, artistic, political, or scientific value. Id.
We shall not substitute our opinion for that of the jury absent a finding that the jury's decision is contrary to the great weight of the evidence. We can make no such finding in this case.
Viewing the evidence in the light most favorable to the prosecution, as we must, Morgan v. State, 589 So.2d 1315
(Ala.Crim.App. 1991), we hold that the trial court did not err in denying the appellant's motion for a directed verdict.
 III
The appellant argues that the trial court erred in denying his motion to quash the jury venire because, he said, none of the veniremembers was black; and because some of the veniremembers knew each other; therefore, he says, the venire was not a fair cross section of the community.
To establish a violation of the fair cross-section requirement, the appellant must establish
 "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the *Page 523 
number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."
Duren v. Missouri, 439 U.S. 357, 366, 99 S.Ct. 664, 669,58 L.Ed.2d 579 (1979). Here, the appellant presented no evidence tending to establish these necessary elements. Although we note that blacks are a distinctive group, the appellant presented no evidence tending to show that the representation of blacks in venires from which juries are selected was not fair in relation to the number of blacks in the community or that the underrepresentation in this case was due to a systematic exclusion of blacks in the jury selection process. Thus, this Court cannot hold that the fair cross-section requirement was violated.
Additionally, we cannot hold that the trial court erred in denying the appellant's motion to quash the jury venire because several veniremembers apparently knew each other. The fair cross-section requirement " 'ensures only a venire of randomness, one free of systematic exclusion. It does not ensure any particular venire.' " Sistrunk v. State,630 So.2d 147, 149 (Ala.Crim.App. 1993) (citation omitted). It does not ensure a venire of potential jurors who are strangers to one another. It is the master jury wheel, not the venire, that must represent a fair cross-section of the community. Id. The fact that veniremembers know each other does not establish a violation of the fair cross-section requirement.
 IV
The appellant argues that the trial court erred in sentencing him, because, he says, the trial court improperly sentenced him for the offense for which he was acquitted, i.e., harassing communications, rather than for the offense of which he was convicted, i.e., unlawful public dissemination of obscene material. The appellant bases this argument on the comments of the trial judge at the sentencing hearing, which, in part, were as follows:
 "[The court:] Mr. Abernathy was found guilty by a jury back on May 4 for the offense of harassing communications under § 13A-12-200.3, Code of Alabama.
". . . .
 "[The court:] Mr. Abernathy, this is a difficult case. I don't have any problem with you practicing whatever religion you want to practice, but you have violated the criminal Code of this state by harassing communications."
It is apparent from reading the record of the sentencing hearing that the trial judge properly sentenced the appellant for the offense of distributing obscene material pursuant to § 13A-12-200.3, for which the appellant was found guilty, but that the trial judge inadvertently referred to the obscene materials as harassing communications. The appellant did not even raise this error in the trial court. Moreover, the trial court's written order correctly reflects that the jury found the appellant guilty of disseminating obscene material and that the trial court properly sentenced him under § 13A-12-200.3, Code of Alabama 1975. Therefore, we find the appellant's contention that he was sentenced for the wrong offense without merit.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.