[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 937 
The appellant, Lavon Guthrie, alias, was convicted after a jury trial of the capital offense of murder of Rayford Howard committed during a robbery in the first degree or an attempt thereof, see § 13A-5-40(a)(2), Code of Alabama 1975. At the sentencing phase of the trial, the jury voted unanimously to recommend that Guthrie be sentenced to death. At the sentencing hearing held pursuant to §§ 13A-5-47 through -52, the trial court sentenced Guthrie to death by electrocution.
This appeal arises from Guthrie's second trial for this offense.[1] The evidence presented to the jury at Guthrie's second trial on this charge, is substantially the same as the evidence presented at his first trial on this charge. Therefore, for purposes of this opinion, we will not recite the facts in the case, but will adopt the facts as stated in Guthrie v. State,616 So.2d 914, 916-20 (Ala.Cr.App. 1993), unless we expressly note otherwise. *Page 938 
In brief, this case stems from a short-lived interstate crime spree, involving Guthrie and his accomplice, Harvey Lee Windsor. The state's evidence showed that they stole a car in Tennessee and drove through several counties in northeast Alabama, where they robbed and murdered the clerks of two convenience stores. The following facts, recited in our earlier opinion, were not before the jury in this trial:
 (1) that, according to L.G. Windsor, Harvey Lee Windsor was seen in a "lightish grey" car,
 (2) that, according to Bobbie Sue Osborne, Windsor was with Guthrie on the day of the offense,
 (3) that, according to Bobbie Sue Osborne and Sammie Sue Wilson Osborne, the word "Boss" was written on the side of the Mustang automobile,
 (4) that, according to Jane Renee Pepper, one of the men seen leaving her husband's service station was wearing blue jeans and a cap, and had long hair,
 (5) that the cash register at Randall Pepper's service station was missing some cash,
 (6) that pieces of an ice-cream cone were found in the stolen Mustang after police recovered it, and
 (7) that "[t]wo recoil pads suitable for use on a shotgun were found in [Guthrie's sister's] mobile home," that "[s]he denied ownership of the recoil pads," and that "[s]he told Tennessee law enforcement officers when [Guthrie] had last been at her home." 616 So.2d at 919.
We do not consider these facts for any purpose in reviewing this case.
The following facts, presented to the jury in Guthrie's second trial on this charge, were not recited in our previous opinion:
 (1) that at the time of the offense, Guthrie had a beard,
 (2) that the man Frank Woodward saw reloading a "sawed-off shotgun" at Rayford Howard's store had a beard,
 (3) that, according to Michael Maxwell, Guthrie resembles the bearded man seen at Randall Pepper's store about 10 minutes before Pepper was killed.
Guthrie did not testify and offered no evidence in his defense during either the guilt or sentencing phases of the trial. He appeals his conviction and death sentence, raising several issues. Because some issues raised by Guthrie in his brief overlap other issues, we have not necessarily addressed the issues in the order that they appear in his brief; however, we have addressed in this opinion all the issues he raises in his brief.
 I.
Guthrie contends that the state failed to present sufficient evidence to support the jury's finding that he was guilty of the capital offense of murder committed during a robbery. Guthrie raised this issue on the appeal of his first conviction. In that opinion, this court reviewed the evidence, and found that this argument was without merit.Guthrie, 616 So.2d at 920-21. Reviewing the same evidence, while allowing for the differences in the evidence noted above, we reaffirm our previous holding. The evidence presented to this jury in support of Guthrie's guilt was overwhelming and uncontradicted. This evidence was clearly sufficient to prove Guthrie's guilt of the charged capital offense beyond a reasonable doubt.
 II.
Guthrie contends that the trial court erroneously admitted evidence of the collateral crime of the murder during a robbery of Randall Pepper in Colbert County. This issue was also raised in Guthrie's appeal of his previous conviction, and this court found this argument to be without merit. Guthrie, 616 So.2d at 921-25. Guthrie has presented no compelling reason for this court to reverse our previous decision as to this issue. Based on our reasoning in Guthrie, supra, we find that this issue is without merit.
 III.
Guthrie contends that the trial court erred by failing to grant his motion to quash the petit jury venire. Guthrie contends that the trial court's ruling deprived him of his constitutional right to a fair and impartial jury, denied him due process of law, and *Page 939 
violated the legislative policy of §§ 12-15-55 and -56, Code of Alabama 1975. Guthrie bases this argument on the claim that African Americans were underrepresented on the venire. The only information offered in support of his argument is statistical information offered in Guthrie's motion to quash the jury venire. In that motion, Guthrie alleges that, "[u]pon information and belief, the African American community constitutes between eight and twelve percent of St. Clair County's total population."
Guthrie correctly sets forth the standard for reviewing this claim. In Abernathy v. State, 642 So.2d 519, 522-23
(Ala.Cr.App. 1994), this court stated that three things must be proven in order for the trial court to quash the jury venire: (1) that the group that is alleged to be excluded is a distinctive group in the community; (2) that the representation of the group on the present venire is not fair and reasonable compared to the percentage of that group in the community; and (3) that the underrepresentation is caused by a systematic exclusion of the group in the selection process.
Guthrie is not entitled to a venire representing an exact cross section of the community. He is, however, entitled to a jury venire that was drawn free from the systematic exclusion of any one group.
 "It is true that the particular panel from which the appellant's jury was struck contained a substantially smaller percentage of blacks than does the population of Dale County. However, the fair cross-section requirement ensures only a venire of randomness, one free of systematic exclusion. It does not ensure any particular venire. Rather than being entitled to a cross-sectional venire, a defendant has a right only to a fair chance, based on a random draw of having a jury drawn from a representative panel."
Dobyne v. State, 672 So.2d 1319, 1328-29 (Ala.Cr.App. 1994),aff'd 672 So.2d 1354 (Ala. 1995).
In this case, the record clearly reflects that the jury venire was randomly selected from a list of licensed drivers in St. Clair County. This court has found this method of random selection to be proper. See Dobyne, supra. Clearly, Guthrie has failed to meet the third prong set forth by this court inAbernathy. This issue is without merit.
 IV.
Guthrie, who is white, contends that the prosecution struck, in violation of the rule announced in Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the sole black veniremember remaining after both parties exercised their challenges for cause. See also Powers v. Ohio, 499 U.S. 400,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Therefore, Guthrie contends, the trial court erred by denying his Batson motion.
At the conclusion of jury selection, Guthrie timely made aBatson objection. In support of this motion, Guthrie relied on the single fact that the prosecution used a peremptory challenge to strike the only remaining black veniremember. The trial court declined to find that Guthrie had established a prima facie case of discrimination. However, it instructed the prosecution to state its reasons for this strike. "Where a trial court has made no express finding that a prima facie case of discrimination has been established but nonetheless requires a prosecutor to explain its peremptory challenges, this court will consider such a finding to be implied and will proceed directly to evaluate the prosecution's explanations." Sims v.State, 587 So.2d 1271, 1276 (Ala.Cr.App. 1991), cert. denied,502 U.S. 1098, 112 S.Ct. 1179, 117 L.Ed.2d 423 (1992).
The peremptory strike at issue in this case was made against veniremember 60. In her questionnaire and on voir dire veniremember 60 stated that the district attorney's office had contacted her regarding a worthless check charge. During theBatson hearing, the prosecution stated that it struck every veniremember contacted by the district attorney's office in St. Clair County regarding a worthless check charge. The record shows that veniremember 60 had been convicted of passing worthless check. Guthrie offered nothing in rebuttal.
The record shows that, in fact, the prosecution did not strike every veniremember who had been contacted by the district attorney's *Page 940 
office regarding worthless check charges. Guthrie successfully challenged one such veniremember for cause. Three veniremembers in this category remained on the panel when the parties exercised their peremptory challenges. Guthrie struck one of these remaining veniremembers (a white woman), and the prosecutor struck the other two (a white woman and a black woman). No veniremembers contacted by the prosecutor regarding worthless checks served on the trial jury. This refutes the charge that the stated reason for the strike is pretextual. We further note that the record of jury voir dire indicates that Guthrie's defense counsel was currently representing veniremember 60 in an ongoing legal matter. Although the prosecutor did not, on the record, state this fact as a reason for striking veniremember 60, this fact further indicates that the prosecutor's stated reason was not pretextual.
The trial court ruled that the prosecution articulated a legitimate, race-neutral reason for this strike. We conclude that that ruling was not clearly erroneous. This court agrees with the trial court's finding. Therefore, we find no error in its denial of Guthrie's Batson motion.
 V.
Guthrie alleges that the prosecution made several comments in its arguments to the jury that warrant a reversal of Guthrie's conviction. As we will discuss in detail below, defense counsel did not interpose a sufficient objection to any of the comments on the grounds now asserted on appeal. Because the grounds now asserted are raised for the first time on appeal, the propriety of the comments is reviewed under the "plain error" rule, Rule 39(k), Ala.R.App.P.
 "In considering what constitutes 'plain error' in a capital case, the Alabama Supreme Court has looked to the federal court's interpretation of what is 'plain error.' See Ex parte Harrell, 470 So.2d 1309 (Ala. 1985); Ex parte Womack, 435 So.2d 766 (Ala. 1983) [, cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983)].
 "In United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the Supreme Court stated that the plain error doctrine should be used to correct only 'particularly egregious errors' . . . which are those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings'. . . . The plain error rule should be applied 'solely in those circumstances in which a miscarriage of justice would otherwise result.' Young, supra, [470 U.S., at 16] 105 S.Ct., at 1047. . . .
 "Furthermore, the court noted that the plain error doctrine requires that the claimed error not only seriously affects "substantial rights" [of the defendant], but that it had an unfair prejudicial impact on the jury's deliberations. Only then would [a] court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice.' Young, supra, [470 U.S., at 16, n. 14] 105 S.Ct., at 1047, n. 14."
Hooks v. State, 534 So.2d 329, 351-52 (Ala.Cr.App. 1987), aff'd,534 So.2d 371 (Ala. 1988), cert. denied, 488 U.S. 1050,109 S.Ct. 883, 102 L.Ed.2d 1005 (1989) (quoted with approval inKuenzel v. State, 577 So.2d 474, 481-82 (Ala.Cr.App. 1990),aff'd, 577 So.2d 531 (Ala. 1991), cert. denied, 502 U.S. 886,112 S.Ct. 242, 116 L.Ed.2d 197 (1991)). See Bush v. State [Ms. CR-90-1652, December 1, 1995], ___ So.2d ___ (Ala.Cr.App. 1995);see also Ex parte Hart, 612 So.2d 536 (Ala. 1992), cert.denied, 508 U.S. 953, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993) (in a capital case, "[t]he failure to object will weigh against any claim of prejudice").
In reviewing these comments, we note that, during its introductory remarks to the jury at the beginning of the trial, and at the beginning of its oral charge to the jury, the trial court informed the jury that it was the court's responsibility to instruct the jury as to the law applicable to the case. We further point out that even the prosecutor, in his closing argument, reminded the jury that the trial court was going to instruct the jury on the law to be applied in this case.
 A.
Guthrie first claims that the trial court erred in permitting the prosecutor, in his guilt-phase closing argument to the jury, to define the reasonable doubt standard of proof, because, he argues, the prosecutor *Page 941 
misstated the law in such a way as to lessen the prosecution's burden of proof, in violation of the principles enunciated inCage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339
(1990). The contested comment was in the following portion of the prosecutor's argument (the contested comment is underlined):
 "The State of Alabama has a burden in every criminal case to prove beyond a reasonable doubt that in fact the defendant is guilty of the material elements of . . . murder during the course of a robbery in the first degree. . . .
 "Now, what is beyond a reasonable doubt? It doesn't mean beyond all doubt, it is not a mere doubt, it is not beyond every doubt, and it certainly doesn't mean give Guthrie the benefit of the doubt.
 "MR. VANDALL [defense counsel]: Your Honor, I am going to object to that.
 "MR. WILLIAMSON [the prosecutor]: The State of Alabama is not required to prove to a mathematical certainty what we have alleged in the indictment. It is not possible to prove to a mathematical certainty the allegations of the indictment. If we could do that, we wouldn't need juries. If it were able to be proved to a mathematical certainty, then you people wouldn't be necessary. But we are not required to do that. No.
 "We are required to prove to you beyond a reasonable doubt. And if you are convinced beyond a reasonable doubt, not speculation, then you are convinced to a moral certainty. And convinced of what? That Colon Lavon Guthrie intentionally killed Rayford Howard while committing a robbery." (R. 925-26).
Our review of this issue is governed by Butler v. State,659 So.2d 1021 (Ala.Cr.App. 1995). In that case, the appellants contended that the trial court erred in denying their motion for a mistrial made in response to the following comments by the prosecutor: "Beyond a reasonable doubt does not mean beyond all doubt. It does not mean beyond a doubt; and it certainlydoes not mean to give the defendant the benefit of a doubt." 659 So.2d at 1022 (emphasis added). In finding that the appellants' motion for a mistrial was untimely, this court, id.
at 1022-23, quoted the following passage from Allen v. State,659 So.2d 135, 144-45 (Ala.Cr.App. 1994):
 " '. . . In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App. 1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App. 1983); Carpenter v. State, 404 So.2d 89, 97
(Ala.Cr.App. 1980), cert. denied, 404 So.2d 100
(Ala. 1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016
(Ala.Cr.App. 1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App. 1982).'
 "Bankhead v. State, 585 So.2d 97, 105-07
(Ala.Cr.App. 1989), remanded on other grounds, 585 So.2d 112 (Ala. 1991).
 " '[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.'
 "United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985), quoted in Murry v. State, 562 So.2d 1348, 1354 (Ala.Cr.App. 1988)."
After holding that the appellants' objection was untimely, the court further stated:
 "[E]ven if a timely objection had been made, viewing the prosecutor's statement in the context of the entire trial, it cannot be said that this statement affected the fairness of the trial, especially in light of the complete instructions as to the burden *Page 942 
of proof given by the trial court to the jury."
659 So.2d at 1023.
In considering the comment here contested, we review it under the plain error standard. Although defense counsel did object, the objection was a general objection, and a general objection does not preserve the trial court's ruling for review "unless the ground is so obvious that the trial court's failure to act constitutes prejudicial error." Lawrence v. State,409 So.2d 987, 989 (Ala.Cr.App. 1982). The ground now argued was not so obvious that the trial court's failure to act constitutes prejudicial error. Moreover, defense counsel received no ruling on his general objection. See Butler.
While we do not condone this comment, we find that it did not amount to plain error, particularly in consideration of this court's holding in Butler (the same comment did not merit reversal). In the context of the arguments of counsel and in light of the trial court's instructions, it was not a "particularly egregious error" and the comment did not have an unfair prejudicial impact on the jury or seriously affect Guthrie's substantial rights.
As a final note, we point out that any argument based on the prosecutor's references to "moral certainty" is without merit under Ex parte Taylor, 666 So.2d 73 (Ala. 1995).
 B.
Guthrie also contends that the trial court erroneously overruled his objection to the prosecutor's comments made in the guilt-phase closing arguments regarding the nature of the intent necessary to support the offense of capital murder. More particularly, Guthrie argues that the following comments gave the jury the erroneous impression that the felony-murder doctrine could supply the particularized intent necessary to establish the offense of capital murder:
 "If you have decided that, after the 12 of you deliberate, that [Guthrie] did intentionally kill [Rayford Howard] while he was robbing him, then that is as far as you need to go, you have reached a verdict. . . .
 However, in the State of Alabama, the charge of capital murder, an intentional murder during the course of a robbery, includes what is called a lesser included offense. And Judge Hereford will charge you on what that lesser included offense is. It is there by operation of law. It is not printed or written on. . . the indictment, but it is there because the law in the State of Alabama says it must be there, a lesser included offense of murder.
 "Again, if you are convinced beyond a reasonable doubt that the defendant, Guthrie, robbed Mr. Howard and killed him, then you need not go further to consider murder. But Judge must charge you and in Alabama you could consider murder if you don't think he is guilty of robbing and killing. And there is two ways, two ways that Mr. Guthrie over there could be found guilty of this lesser offense.
 "MR. VANDALL: Your Honor, may I enter an objection at this time.
"THE COURT: Excuse me, just a minute.
 "MR. VANDALL: I would ask him to confine his statements to arguments of the evidence and not arguments as to the law. That is improper in a case of this type.
"THE COURT: Overruled.
 "MR. WILLIAMSON: Murder, the lesser included offense of murder could be found by this jury if [you] find that Colon Lavon Guthrie intentionally took the life of Rayford Howard, period. Well, we are going to ask you to find that, but in order to find him guilty of that murder, then you must find that there was no robbery, that his billfold was not taken, that the items put into evidence by the State of Alabama that were recovered were not gone, that his money was still there. To find him guilty of that lesser included offense of murder, you must find no [sic] of them. No theft [by] force while armed.
 "We submit to you that you can not possibly find that whoever killed Rayford Howard didn't take those items. But there. . . is another way, and they are going to stand up here and talk about another way in just a minute when I sit down. You could find, based on what they *Page 943 
call the felony murder doctrine in Alabama, that he is guilty of the lesser included offense of murder in another way. Another way. And that is, that there was a robbery — which we believe we have proved to each of you — there was a robbery and Colon Lavon Guthrie committed that robbery and during the commission of that robbery that Mr. Howard was killed by either Mr. Guthrie or somebody else unintentionally.
 "If you believe they robbed Mr. Howard and they killed somebody unintentionally, then he can be guilty of just straight plain murder as a lesser included offense. So, 'intentionally' is a big word here. It is a big word with a small definition. Judge Hereford is going to tell you what 'intentionally' means. Because to find him guilty of capital murder, you have to find that they intended to cause Mr. Howard's death.
 "Judge Hereford is going to tell you that a person acts intentionally . . . if his purpose is to engage in that conduct or to cause that result. And if a person stands before a man with a sawed off shotgun three feet from his chest and pulls the trigger, he has to know, he has to expect that result. He has to know that Mr. Howard's heart is going to be blown away. The intent is there. When he stood before that man and pulled his trigger, he knew what was going to happen. His purpose was to engage in that conduct, to pull that trigger and to cause that result.
 "In order to find him guilty of one of these lesser offenses, you have to find that either there was no robbery, that all that wallet and billfold and all that money stuff we put into evidence doesn't exist, or that maybe there was no intentional killing. The felony-murder doctrine is there. If these guys had robbed Mr. Howard and left him alone like they could have done, taken his few hundred dollars and left him in that store to go home with his wife, and went outside and sped away and ran over Frank Woodard out there and killed him, he would be up here on murder. Because he didn't mean to kill Frank Woodard. He was running away from a store where Mr. Howard could have been alive. That's what the felony murder doctrine is for; if you kill somebody that you don't mean to kill. But if you go and put a sawed-off shotgun three feet from a man's chest and pull the trigger, then you are guilty of capital murder.
 "So, if you find that he committed an intentional murder and there was a robbery, then you must find him guilty of capital murder." (R. 927-32).
We review these comments under the plain error standard because defense counsel's specific objection at trial — that the prosecutor should not be permitted to argue the law — fails to preserve the ground now asserted — that the prosecutor misstated the law.[2]
In reviewing the prosecutor's comments, we emphasize that we are very sensitive to the possible confusion that can arise in the jury's consideration of the lesser offense of felony-murder and the intent required for a finding of the offense of capital murder. See generally Starks v. State, 594 So.2d 187, 190-95
(Ala.Cr.App. 1991). The distinction between the capital offense of murder during a robbery, which requires a specific or particularized intent to kill, and felony-murder, which does not require a specific intent to kill, must be understood by the jury. The question of intent to kill in such a case is the sole distinction between the two offenses and is the only element separating a capital murder defendant from a possible sentence of death.
We fail to see how the prosecutor's comments would have led the jury to erroneously conclude that Guthrie could be guilty of capital murder on a finding that he did not have the intent to kill the victim. Moreover, *Page 944 
the trial court's jury instructions set out the elements of the capital offense and the critical distinction between the two offenses. In fact, the last substantive instruction that the jury was given, a charge requested by Guthrie, is as follows:
 "[E]mbraced within the offense or within the charge of capital murder are certain lesser included offenses, one of these is murder. If you find from the evidence presented that the defendant, Colon Lavon Guthrie, intended to commit the offense of robbery in the first degree but did not have the intent to kill Rayford Howard during the course of said robbery, but find that the death of Rayford Howard was nevertheless caused by the defendant or an accomplice, then you should find the defendant guilty of murder." (R. 976-77).
Compare Starks, 594 So.2d at 193. We note that defense counsel made no objection to the adequacy of the trial court's instructions in regard to the critical distinction between the two offenses. Based on counsel's arguments in their entirety and on the trial court's instructions to the jury, we conclude that the jury was given an adequate description of the distinction between capital murder and felony-murder.
 C.
Guthrie contends that the prosecutor made an argument that minimized defense counsel's "professional responsibility" and prejudiced the jury because it insinuated that his defense was a sham. Guthrie did not object to this argument. Therefore we review the following argument under the plain error doctrine. The argument is as follows:
 "So, if you find that he committed an intentional murder and there was a robbery, then you must find him guilty of capital murder. Now, I talked to you a little bit about reasonable doubt, your job as a juror is not to look for doubt. Your job is to seek a verdict, seek the truth, reach a verdict. The defendant's job over here, he wants to throw up doubts and he has been doing that for this week, throughout this trial. Maybe that's not the same body. Who identified it[?] I don't know. Maybe this forensic pathologist isn't trained as a firearms expert to tell you what she knows? Maybe somebody else could have gotten in this car, this Ford 'Boss' Mustang, and planted all this evidence. Maybe that happened? They throw up doubts, that is their job. Maybe the fingerprint is not a scientific — maybe fingerprint testimony is not a science? They want you to think of lots of different things besides what really happened.
 "Now, Mr. [Vandall] and Mr. Hamlin [are] going to stand up here in a minute and talk to you about all these doubts they have thrown up. And they are either going to tell you that the defendant, Guthrie, wasn't there so you have to find him not guilty, or they are going to tell you, well, he was there but he didn't mean to kill him, or he didn't kill him. Now I don't know which one he is going to say, but I don't think you are going to buy either one of those. You know that he was there and you know that somebody meant to kill him." (R. 931-33).
This argument was a proper comment based on the defense's strategy revealed through the course of this trial. A prosecutor is allowed to argue the evidence during closing arguments, drawing all reasonable inferences, conclusions, and impressions from that evidence. See Hunt v. State,659 So.2d 933 (Ala.Cr.App. 1994), aff'd, 659 So.2d 960, cert. denied, ___ U.S. ___, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); and Williamsv. State, 627 So.2d 985 (Ala.Cr.App. 1991), aff'd, 627 So.2d 999
(Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387,128 L.Ed.2d 61 (1994). We disagree with Guthrie's characterization of the prosecutor's comments.
These comments refer to the fact that the state's evidence presented at trial was not controverted by any witnesses or evidence offered by the defense. This court has approved of this manner of argument. Ashurst v. State, 462 So.2d 999
(Ala.Cr.App. 1984) (applying the plain error doctrine). We find no plain error.
 D.
Guthrie contends that the prosecutor intentionally tried to "inflame" the jury by *Page 945 
commenting, during closing arguments, on the evidence of the murder of Randall Pepper. As a threshold consideration, we note that in Issue II of this opinion, we reaffirmed our previous holding that evidence of Pepper's murder was properly before the jury as probative of the identity of Howard's murderer. Because this evidence was properly before the jury, it was subject to comment during closing arguments. See Bush, supra.
Guthrie's contention that the prosecutor's manner of arguing this evidence needlessly inflamed the jury has no merit. During closing arguments, Guthrie argued the following: "Now, our argument has been all along, and our argument is to you, that the only purpose of the State going into the death of Mr. Pepper was to inflame you and to desensitize you towards Mr. Guthrie." In response to that comment, the prosecution argued the following:
 "Now, if the State of Alabama brings evidence in this case, we bring it from that witness stand. And if there has been ever any talk in here about another homicide or another capital murder committed in any other county or any other place, it ought to inflame you. What are we talking about, folks? We are talking about two people's lives, we are talking about two people here, in a day, in six hours time. . . . Isn't there a definitive word called 'inflame' that you can use. If you were going to talk about and inflaming someone, wouldn't two dead murdered robbed people in one day inflame you? Should it not?
". . . .
 "Get a gun, get a car, get a tag, kill a man, run. Don't get caught, that is the theme here, see. Don't let nobody see you, don't let anybody know that you are in this automobile. Leave there on the 24th, come down here on the 25th, come over to Pell City and sit and eat a sandwich with a lady that says, 'I knew Guthrie, I knew him through Bobby. He referred to this other person as Harvey, they got out of this car, they were drinking Budweiser [beer].' Four miles, five miles from where Mr. Howard was murdered folks, killed, shot dead, heart blown open. It ought to inflame you. It ought to inflame you. Five miles. Ashville, Pell City, Mr. Howard's store. 59-year-old man, father, husband. He had a heart that pumped good, it ain't pumping so good now, he got it blown out.
". . . .
 "Now, not only do they go up there and do the same thing, but there is something up there that you get to see that makes you kind of think here about that intent factor. Maxwell [identifies] him, Maxwell [identifies] the car, and Maxwell says something that you need to think about, you need to consider. He goes in and gets some nasal cold spray or what not and what happens? The man sitting out there eating ice cream with his foot on the ground, gets out, walks in, they go over and one of them goes with Mr. Pepper back in that store they have a little bit of conversation they come back and then what happens? Maxwell said he walked in ahead of one of them that was sitting in the car. They had a little conversation, he said, and then he told them to go on and get the hit. That is called casing the joint, folks. That is called knowing what you are stopping there for. That is called wanting Mr. Maxwell to leave, and you know Mr. Maxwell left, and you know because he told you he left before they did, and you know that after he left there was a man's head blown off." (R. 949-956).
These comments were not objected to at trial and are thus reviewed under the plain error standard. We find that they do not amount to plain error. The prosecutor's manner of arguing the evidence of the collateral crime did not needlessly inflame and unfairly prejudice the jury. Moreover, the prosecutor's tact was a legitimate response to defense counsel's argument and an allowable recognition of the need for law enforcement to combat an overwhelming ill of our society. We do not believe that the prosecutor's intent was to inflame the jury to convict Guthrie without consideration of the evidence. The mere collateral consequence that, by human nature, the jury was inflamed by the comment is not fatal to the prosecutor's argument: prejudice is inherent in the inflammatory nature of the facts properly before *Page 946 
the jury. These comments could not have been reasonably construed to lead the jury to convict Guthrie without sufficient evidence.
In his brief to this court, Guthrie appears to argue that the prosecutor's comments prove that his sole purpose for offering the evidence of Pepper's murder was to inflame the jury. This argument has no merit. The prosecutor's use of the word "inflame" can not be construed as an admission that his intent in introducing the evidence of the collateral crime was to inflame and impassion the jury. As stated above, this evidence was more probative than prejudicial and was properly admitted. In the context used by the prosecutor, the word "inflame" is synonymous with a vast array of terms, e.g., "shock," "appall," "outrage," and "repulse." These comments were legitimate inferences drawn from the evidence presented at trial. SeeWilliams, supra.
 E.
Finally, Guthrie contends that the prosecutor committed reversible error by referring to him as a "heathen" during closing arguments. Again, Guthrie did not object to this comment at trial so we review the comment under the plain error doctrine. Guthrie's argument has no merit. See Pierce v. State,576 So.2d 236, 250 (Ala.Cr.App. 1990), cert. denied,576 So.2d 258 (Ala. 1991), aff'd on return to remand, 612 So.2d 514
(Ala.Cr.App.), aff'd, 612 So.2d 516 (Ala. 992), cert. denied,510 U.S. 872, 114 S.Ct. 201, 126 L.Ed.2d 158 (1993) (conviction upheld where the prosecutor stated that the defendant had evil in his soul); Kuenzel v. State, 577 So.2d at 491 (conviction upheld where the prosecutor referred to the appellant as a "low life"). We do not find the prosecutor's comment to be plain error.
 VI.
In accordance with Ala.R.App.P. 45A, we have examined the record in this case for any plain error, whether or not brought to our attention or to the attention of the trial court. We have also reviewed Guthrie's sentence pursuant to § 13A-5-53, which requires that, in addition to reviewing the case for any error involving the conviction, we also review the propriety of the death sentence. This review includes a determination of the following: (1) whether any error adversely affecting Guthrie's rights was made in the sentence proceedings; (2) whether the trial court's findings concerning: the aggravating and mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section 13A-5-53(b) requires that, in determining whether death is the proper sentence, we must determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether an independent weighing by this court of the aggravating and mitigating circumstances indicates that death is the proper sentence; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Upon review of the entire record, we have found no plain error to exist in the guilt phase of Guthrie's trial. Therefore, we affirm Guthrie's conviction for the capital offense of murder of Rayford Howard committed during a robbery in the first degree or an attempt thereof, in violation of § 13A-5-40(a)(2), Code of Alabama 1975. However, for reasons stated below, we find it necessary to reverse Guthrie's sentence, and remand the cause to the trial court with instructions to conduct a new sentencing hearing before the trial court. The new hearing shall be held in accordance with § 13A-5-47.
After Guthrie was convicted of the capital offense charged in the indictment, a separate sentence hearing was held before the jury in accordance with §§ 13A-5-45 and -46. After hearing evidence concerning the aggravating circumstances (at Guthrie's request, defense counsel presented no evidence in mitigation and argued in mitigation only that Guthrie was merely an accomplice to this capital offense and that his prior conviction for assault in the first degree occurred eight years before the instant offense), after being properly instructed by the trial court as to the applicable law, and after being correctly advised as to its function in finding aggravating and mitigating circumstances and in weighing those circumstances, if appropriate, *Page 947 
the jury, by a unanimous vote, returned a verdict recommending that Guthrie be sentenced to death.
Thereafter, the trial court held another hearing, in accordance with § 13A-5-47, to determine whether it would sentence Guthrie to death. Again Guthrie declined to present any mitigating evidence. He also offered no evidence in rebuttal of any information contained in the presentence report. Furthermore, he stated, on the record, that he refused to allow his attorneys to make any argument on his behalf.
After the sentencing hearing before the trial court, it entered specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49 and each mitigating circumstance specified in §13A-5-51. In addition, it made specific written findings of fact summarizing the crime and Guthrie's participation in it as required by § 13A-5-47(d). In its findings of fact, the trial court found the existence of the following aggravating circumstances: (1) that Guthrie had previously been convicted of a felony involving the use of or threat of violence to the person, i.e. first degree assault (§ 13A-5-49(2)); and (2) that the capital offense was committed while Guthrie was engaged in or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit a robbery (§ 13A-5-49(4) and § 13A-5-50).
In preparation for Guthrie's sentencing hearing before the trial court, it ordered and received a written presentence investigation report, as required by § 13A-5-47(b). We are concerned about the perfunctory nature of this presentence report. The presentence report is divided into four sections, entitled: "Present Offense," "Record of Arrests," "Personal/Social History," and "Evaluation of Offender." The first section quotes the facts of the case from our opinion in Guthrie's first trial on this charge. Guthrie, supra, at 916. The second section contains a complete list of Guthrie's prior criminal charges, including traffic offenses and juvenile offenses. The third section, which was Guthrie's personal and social history, was taken from an interview with Guthrie at least five years before this sentencing hearing. The report indicates that no effort was made to conduct a more recent interview.[3] In sum, this portion of the report indicates that Guthrie's father, a retired farmer and school bus driver, died in 1986; that Guthrie's mother was living and employed; and that Guthrie is the youngest of four children, unmarried, in good physical health (at the time of the interview), used occasionally alcohol and marijuana, had a 9th grade education, owned no property, and supported himself by performing manual labor. The final section, "Evaluation of Offender," contains no information. In its entirety, this section states, as follows:
"Psychological Reports:
"N/A
"Reputation on Community Activities:
"N/A
"Probation and Parole Officer's Remarks:
"N/A"
This report indicates that no psychological reports were available for the purpose of evaluating Guthrie; however, elsewhere, the report states that Guthrie was incarcerated at Taylor Hardin Secure Mental Facility in 1988. The lack of information in this section implies little, if any, attempt to subjectively evaluate Guthrie. Surely, a report or file in connection with Guthrie's stay at Taylor Hardin exists, and should be made a part of this report.
This presentence report's cursory and incomplete treatment of Guthrie troubles us, because it may have hamstrung the trial court's consideration of the full mosaic of Guthrie's background and circumstances before determining the proper sentence. As such, this presentence report risked foiling the purpose of § 13A-5-47(b). We find that the insufficiency of this report requires a remand for the trial court to reconsider Guthrie's sentence with a sufficient presentence report. *Page 948 
We also remand this case for a new sentencing hearing before the trial court, because the trial court's sentencing order implies that it found nonstatutory mitigating circumstances to exist but did not identify them. See § 13A-5-52. The order states, in pertinent part:
 "After weighing the aggravating and mitigating circumstances in this case, in an appropriate manner for determining a proper sentence, the Court finds beyond a reasonable doubt that the aggravating circumstances are sufficient to support the death penalty and that the mitigating circumstances present are outweighed by the aggravating circumstances."
(Emphasis added.) As noted in its sentencing order, the trial court specifically found none of the statutory mitigating circumstances specified in § 13A-5-51 to exist. Thus, the implication is that the court found nonstatutory mitigating circumstances to exist. In its sentencing order, however, the trial court failed to specify the nonstatutory mitigating circumstances that it found. Rather, in that regard, it merely noted that it "considered evidence on nonstatutory mitigating circumstances, [which were] not. . . . specifically offered by defendant, [but] were part of the record of testimony offered in this case." (R. 1030). The record of the sentencing phase before the trial court shows that it stated the following: "I have considered evidence of nonstatutory mitigating circumstances. . . . I'm satisfied that the family life of the defendant has not been all that it could have been." (R. 1030).
Upon review of the entire record, including the presentence report, we cannot determine what circumstances the trial court found in mitigation under § 13A-5-52. The trial court's sentencing order does not provide a sufficient basis for our independent review of the propriety of Guthrie's sentence. Without knowing what the trial court found in the way of mitigating circumstances, we cannot review the appropriateness of this sentence. See generally § 13A-5-53. In capital cases, it is the duty of this court to independently determine whether the sentence of death is appropriate in each particular case. In order to reach this conclusion, we must reweigh the aggravating circumstances against the mitigating circumstances as found by the trial court. See Hooks v. State, 534 So.2d 329
(Ala.Cr.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988), cert.denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989).
Accordingly, the trial court's judgment, sentencing Guthrie to death is reversed, and the cause is remanded with instructions that the trial court conduct a new sentencing hearing in accordance with § 13A-5-47. Prior to resentencing Guthrie, the trial court shall order an updated presentence report, and shall afford Guthrie an opportunity to rebut any portion of the presentence report, and offer any evidence in mitigation that he chooses to offer. On return to remand, the trial court shall file an amended sentencing order, including a transcript of the sentencing proceedings. Due return shall be filed with this court within 60 days of the date of this opinion.
AFFIRMED AS TO CONVICTION; REVERSED AS TO SENTENCE; REMANDED WITH INSTRUCTIONS.
All Judges concur.
[1] At Guthrie's first trial for the murder of Rayford Howard, a jury found him guilty of the capital offense of murder-robbery. The trial court sentenced Guthrie to death. This court reversed that conviction and remanded the cause for a new trial, from which this appeal stems. See Guthrie v. State, 616 So.2d 914
(Ala.Cr.App. 1993). Guthrie was also convicted, in Colbert County, of the capital murder of Randall Pepper, and was sentenced to death. In Guthrie v. State, 598 So.2d 1013
(Ala.Cr.App. 1991), cert. denied, 598 So.2d 1020 (Ala. 1992), this court reversed the Colbert County conviction and remanded the cause to the trial court. As of the date of this opinion, our records do not show that any further action has been taken on that cause.
Guthrie's accomplice, Harvey Lee Windsor, was also convicted of the capital murder of Rayford Howard, and was sentenced to death. This court affirmed that conviction in Windsor v. State,683 So.2d 1027 (Ala.Cr.App. 1994). The Alabama Supreme Court has granted Windsor's petition for certiorari review in that case. Windsor was also convicted, in Colbert County, of the capital murder of Randall Pepper, and was sentenced to death. This court reversed that conviction, and remanded the cause for a new trial. See Windsor v. State, 593 So.2d 87
(Ala.Cr.App. 1991). The trial was subsequently transferred to Jefferson County, where Windsor was convicted of felony-murder and sentenced to life imprisonment without parole. This court affirmed that conviction by memorandum in Windsor v. State,658 So.2d 921 (Ala.Cr.App. 1994) (table), and the Alabama Supreme Court denied certiorari review on October 10, 1994.
[2] We note that the ground asserted at trial has no merit. SeeLewis v. State, 456 So.2d 413, 415-16 (Ala.Cr.App. 1984) (" 'Counsel may argue law generally to the jury, subject to the control and guidance of the trial court.' Crowe v. State,435 So.2d 1371, 1382 (Ala.Cr.App. 1983). '(I)t is the right of counsel under the guidance of the court to discuss the rules of law applicable to different phases of the testimony.' VanAntwerp v. State, 358 So.2d 782, 788 (Ala.Cr.App.), cert. denied, 358 So.2d 791 (Ala. 1978).").
[3] Guthrie's presentence report states, under the heading, "Personal/Social History," as follows: "As this subject is in Holman Prison, it was not possible to complete a personal interview. Information which follows was provided by this subject in 1989."