MURDOCK, Justice.
Brandon Washington was convicted by a Jefferson County jury of murder made capital because it was committed during a robbery, see Ala.Code 1975, § 13A-5-40(a)(2), and was sentenced to death. On appeal, the Court of Criminal Appeals rejected several of Washington’s arguments, but determined that the presentence report did not comply with Ala.Code 1975, § 13A-5-47(b), or with Rule 26.3(b), Ala. R.Crim. P. That court then remanded the case for the trial court to hold a new sentencing hearing. Washington v. State, 106 So.3d 423 (Ala.Crim.App.2007).
On remand, the trial court held a new sentencing hearing, at which a new presen-tence report was presented. Washington timely objected to the adequacy of this report. The trial court overruled Washington’s objections and again sentenced Washington to death. On return to remand, the Court of Criminal Appeals affirmed Washington’s conviction and sentence. Washington v. State, 106 So.3d 423 (Ala.Crim.App.2007) (opinion on return to remand).
This Court granted Washington’s petition for a writ of certiorari -with respect to three issues relating to his sentence: whether the trial court committed plain error in admitting victim-impact testimony during the penalty phase of the trial, whether the presentence report introduced at the sentencing hearing held on remand to which Washington objected was inadequate, and whether the Court of Criminal Appeals failed to conduct the requisite independent appellate review of the aggravating circumstances and the mitigating circumstances pursuant to Ala.Code 1975, § 13A-5-53. This Court denied certiorari review as to all the issues raised by Washington relating to the guilt phase of the trial and all the other issues raised by Washington relating to the penalty phase.

I. Facts and Additional Procedural History

The State’s evidence tended to show the following. On January 16, 2005, the victim, Justin Campbell, was shot and killed while working at the Radio Shack electronics retail store in Huffman. The weapon was not recovered. In investigating the murder, police discovered that $1,050 had been stolen from the store and that Campbell’s wallet had been taken.
Washington, who was 18 years old at the time of the murder, had been a sales associate at the Huffman Radio Shack store for *444 several months, but his employment had been terminated in early January 2005 after he failed to report to work. Forensic tests of the evidence recovered at the store and at Washington’s apartment did not connect Washington to the crime. Two of Washington’s friends testified, however, that Washington had admitted to them that he killed a person while he was robbing a Radio Shack store.
During the penalty phase of the trial, the jury heard testimony from Campbell’s parents in which they offered opinions about Washington’s character and urged the jury to recommend the death penalty. Campbell’s father testified:
“My son’s life was taken from him in a brutal, evil, terrible way, by someone without a conscience. I think if you take a life, you should pay with a life and I ask the jury to sentence Brandon Washington to death. I think it is the fair thing to do.”
Campbell’s mother testified:
“My son felt a fear that no person on this earth should feel, and he had a death that no person should have to go through, and I think that Mr. Washington should have to suffer death as my son has suffered death.”
Also during the penalty phase of the trial before the jury, Washington presented mitigation evidence from his maternal grandmother, his sister, and his aunt. Washington’s grandmother testified that Washington’s mother had drug problems and that his mother had abandoned Washington when he was about 13 years old. The grandmother testified that she adopted Washington at that time and that Washington also spent time during his teenage years in two foster homes and in a group home. Washington graduated from high school in 2004, and he was enrolled at Miles College at the time of the murder. Washington’s aunt and sister also testified on his behalf. They testified that Washington was not a bad person, and they pleaded with the jury to impose a sentence of life imprisonment without parole.
The jury recommended the death penalty by a vote of 11 to 1. After a sentencing hearing, the trial court followed the jury’s recommendation and imposed the death penalty. As noted above, Washington appealed, and on appeal the Court of Criminal Appeals, because of the inadequacy of the presentence report, remanded the case for a new sentencing hearing.
At the sentencing hearing on remand, Washington testified that he had suffered from mental problems, that he had been treated for approximately six months at Hillcrest Hospital for those mental problems (apparently on an inpatient basis), and that he had been placed for a time in a therapeutic foster home, apparently after his treatment at Hillcrest.[1] Washington’s treatment at Hillcrest Hospital apparently began when he was 18 years old, or approximately five years before the murder. Washington testified that he was given various psychological and neurological tests at Hillcrest Hospital, but, according to him, he was not told his diagnosis or the exact nature of his problems. The record does not include the dates of his treatment or the dates of, or any details about, his placement in the various foster and group homes. The new presentence report submitted at the sentencing hearing on remand stated “No” to the questions about “Mental Disability” and “Psychological Report”; it makes no other reference to any mental-health or psychological problems. *445 On remand, Washington’s counsel did not present any psychological records or mental-health records or any medical testimony concerning Washington’s mental-health condition.
In its sentencing order on remand, the trial court found the existence of one statutory aggravating circumstance: that the murder was committed during the course of a robbery. The trial court found the existence of two statutory mitigating circumstances: that Washington was only 18 years old at the time he committed the crime and that Washington had no significant history of criminal activity. The trial court found no nonstatutory mitigating circumstances to exist. It again sentenced Washington to death.

II. Admission of Victim-Impact Testimony During the Penalty Phase of the Trial

Washington contends that his Eighth and Fourteenth Amendment rights were violated because, he says, the jury and the trial judge improperly considered testimony from the victim’s parents containing their opinions about Washington, the crime, and the appropriate punishment. Washington did not present this issue to the Court of Criminal Appeals, and he did not object to the introduction of this evidence at trial. Accordingly, we review this issue under the plain-error standard.
“Plain error” has been defined as “ ‘error that is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. Ex parte Taylor, 666 So.2d 73 (Ala.1995). The plain error standard applies only where a particularly egregious error occurred at trial and that error has or probably has substantially prejudiced the defendant. Taylor.’ ”
Ex parte Walker, 972 So.2d 737, 742 (Ala.2007) (quoting Ex parte Trawick, 698 So.2d 162, 167 (Ala.1997)). See also Ex parte Hodges, 856 So.2d 936, 948 (Ala.2003) (plain-error review is to be used “sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result”).
In Booth v. Maryland, 482 U.S. 496, 502, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the United States Supreme Court held that a defendant’s Eighth Amendment rights were violated by the sentencing authority’s consideration of any victim-impact evidence. In Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court partially overruled Booth to allow the sentencing authority to consider evidence of the effect of the victim’s death upon family and friends. Payne, 501 U.S. at 830 n. 2, 111 S.Ct. 2597 (“Our holding today is limited to the holdings of [Booth ] ... that evidence and argument relating to the victim and the impact of the victim’s death on the victim’s family are inadmissible at a capital sentencing hearing.”).
In Ex parte McWilliams, 640 So.2d 1015 (Ala.1993), this Court noted that Payne had only partially overruled Booth and that it had left intact the proscription against victim-impact statements containing “characterizations or opinions of the defendant, the crime, or the appropriate punishment.” 640 So.2d at 1017. The Court in McWilliams held that a trial court errs if it “considers] the portions of the victim impact statements wherein the victim’s family members offered their characterizations or opinions of the defendant, the crime, or the appropriate punishment.” Id.
In Wimberly v. State, 759 So.2d 568, 573-74 (Ala.Crim.App.1999), the Court of Criminal Appeals held that plain error occurred when victim-impact evidence similar to that at issue here was presented to *446 the jury during the penalty phase of the trial. In Wimberly, the victims’ parents read a statement to the jury that, among other things, referred to the defendant as a “predator,” a “murdering thief,” and a “coward.” The statement also speculated on the defendant’s future in prison and his possible execution and asked the jury to impose the death penalty. The court noted that it was reviewing the issue for plain error and stated:
“[Rjeviewing the remarks made by the family member to the jury during the sentencing hearing, we find the cumulative effect of these improper comments to be plain error. Had the prosecutor made these same comments in argument, we would find them to be a textbook example of prosecutorial misconduct. The fact that these same comments were read to the jury by a bereaved family member only magnifies the impact such comments surely had on the jury as it closed to deliberate on its sentence recommendation. We find that these comments were calculated to incite an arbitrary response from the jury and that they should have been excluded.”
Wimberly, 759 So.2d at 573-74. See also Gissendanner v. State, 949 So.2d 956, 962 (Ala.Crim.App.2006) (“[Vjictim impact evidence may be presented during the penalty phase of a capital-murder trial so long as the witness does not recommend an appropriate punishment or characterize the crime or the defendant.”).
In this case, the victim’s parents told the jury that Washington’s crime was “brutal, evil, terrible,” that Washington was “someone without a conscience,” and that death was the appropriate punishment. The State concedes that it was error for the trial court to allow the victim’s parents to testify in this manner. Despite this concession, the State contends that reversal is not required in this case because (1) there is no indication that the trial judge or the jury considered this testimony in determining Washington’s sentence, and (2) because any error was harmless.
The State argues that the trial court did not consider the victim-impact evidence, an argument we find to be without merit. The State’s brief to this Court addresses only the trial judge’s consideration of the evidence; it offers no argument or citation to the record tending to show that the jury did not consider this admittedly improper evidence. We note that it does not appear that the jury was given any instruction specifically addressing the victim-impact testimony.
Further, the State’s assertion that the trial judge did not consider the parents’ testimony is factually incorrect. At the sentencing hearing on remand, the State asked that the testimony of the victim’s parents be adopted and made a part of the new presentence report in lieu of a formal written victim-impact statement. The trial judge stated in response: “I have reviewed their testimony and will consider it as part of the presentence report.” (Emphasis added.) There is nothing in the record to indicate that the trial judge did not consider this testimony.[2]
The State also argues that the admission of the victim-impact testimony was harm *447 less beyond a reasonable doubt.[3] This argument also fails. The argument presented to us by the State is based on a single case, Whitehead v. State, 777 So.2d 781 (Ala.Crim.App.1999). Whitehead, however, is factually distinguishable from the present case.
In Whitehead, the trial court found the existence of four aggravating circumstances and no mitigating circumstances. The defendant in Whitehead was a previously convicted felon; he was on parole at the time of the murder that was the subject of Whitehead. The evidence in Whitehead indicated that the defendant had shot and killed a police officer to prevent the officer from testifying against him in another criminal case involving a theft. The defendant directed his attorney not to present any mitigation evidence. The trial court nonetheless looked for, but did not find, any mitigating circumstances. The Whitehead court stated:
“Although we have concluded that the victim-impact testimony was improper, we also conclude that its admission was harmless beyond a reasonable doubt. Juxtaposed against the strong evidence of aggravating circumstances and the absence of any statutory or nonstatutory mitigating circumstances, it is clear that the victim-impact testimony did not contribute to the jury’s sentencing recommendation.”
Whitehead, 111 So.2d at 848-49.
In contrast to the facts in Whitehead, the present case involves only a single aggravating circumstance and two statutory mitigating circumstances, i.e., that Washington had no prior criminal history and that he was only 18 years of age at the time of the offense.[4] Further, there was evidence in the record indicating that Washington had a history of psychological problems (including several months of treatment in a psychiatric hospital) and that his family life had been unstable. Had an adequate presentence investigation and report been made with respect to these matters (see discussion in Part III, infra), it is possible that the trial court would have found the existence of additional mitigating circumstances. See Ala.Code 1975, § 13A-5-51 (nonexclusive list of statutory mitigating factors).
Under the particular circumstances presented in this case, we are unable to conclude that the trial court’s error in admitting the victim-impact testimony here was harmless beyond a reasonable doubt. We conclude that the admission of the victim-impact testimony was plain error and requires reversal of the judgment of the Court of Criminal Appeals.

III. The Adequacy of the Presentence Report

Although we are reversing the judgment of the Court of Criminal Appeals based on the erroneous admission of the victim-impact testimony, we deem it advisable to address an issue that is likely to recur on remand, if not addressed here: *448 the adequacy of the presentence report that was presented at the sentencing hearing on remand.
Section 13A-5-47(b), Ala.Code 1975, states that, in capital cases, “[b]efore making the sentence determination, the trial court shall order and receive a written pre-sentence investigation report. The report shall contain the information prescribed by law or court rule for felony eases generally and any additional information specified by the trial court.” Rule 26.3(b), Ala. R.Crim. P., states, in pertinent part, that “[t]he presentence report may contain:
“(5) A statement of the defendant’s social history, including family relationships, marital status, interests, and activities, residence history, and religious affiliations;
“(6) A statement of the defendant’s medical and psychological history, if available.... ”
Rule 26.3(b)(5) and (6).[5]
In Ex parte Hart, 612 So.2d 536, 539-40 (Ala.1992), this Court stated:
“The purpose of the presentence investigation report is to aid the sentencing judge in determining whether the jury’s advisory verdict is proper and if not, what the appropriate sentence should be. Clearly, this Court, in adopting the temporary rule [Rule 3, Ala. R.Crim. P. Temp., the predecessor of Rule 26.3(b) ], considered the psychological history of a defendant an important part of sentencing. In determining the sentence, the trial judge must consider the presentence investigation report and any evidence submitted in connection with it, in addition to the evidence presented at trial and during the sentencing hearing.”
(Emphasis added; citations omitted.)
In Guthrie v. State, 689 So.2d 935 (Ala.Crim.App.1996), the Court of Criminal Appeals stated:
“In preparation for Guthrie’s sentencing hearing before the trial court, it ordered and received a written presen-tence investigation report, as required by § 13A-5-47(b). We are concerned about the perfunctory nature of this presentence report. The presentence report is divided into four sections, entitled: ‘Present Offense,’ ‘Record of Arrests,’ ‘Personal/Social History,’ and ‘Evaluation of Offender.’ The first section quotes the facts of the case from our opinion in Guthrie’s first trial on this charge. Guthrie [v. State ], [616 So.2d 914] at 916 [ (Ala.Crim.App. 1993) ]. The second section contains a complete list of Guthrie’s prior criminal charges, including traffic offenses and juvenile offenses. The third section, which was Guthrie’s personal and social history, was taken from an interview with Guthrie at least five years before this sentencing hearing. The report indicates that no effort was made to conduct a more recent interview. In sum, this portion of the report indicates that Guthrie’s father, a retired farmer and school bus driver, died in 1986; that Guthrie’s mother was living and employed; and that Guthrie is the youngest of four children, unmarried, in good physical health (at the time of the interview), used occasionally alcohol and marijuana, had a 9th grade education, owned no property, and supported himself by performing manual labor. The final section, ‘Evaluation of Offender,’ *449 contains no information. In its entirety, this section states, as follows:
“ ‘Psychological Reports:
“ ‘N/A
“‘Reputation on Community Activities:
“ ‘N/A
“ ‘Probation and Parole Officer’s Remarks:
“ ‘N/A’

“This report indicates that no psychological reports were available for the purpose of evaluating Guthrie; however, elsewhere, the report states that Guthrie was incarcerated at Taylor Hardin Secure Mental Facility in 1988. The lack of information in this section implies little, if any, attempt to subjectively evaluate Guthrie. Surely, a report or file in connection with Guthrie’s stay at Taylor Hardin exists, and should be made a part of this report.

“This presentence report’s cursory and incomplete treatment of Guthrie troubles us, because it may have hamstrung the trial court’s consideration of the full mosaic of Guthrie’s background and circumstances before determining the proper sentence. As such, this pre-sentence report risked foiling the purpose of§ 13A-5-í7(b). We find that the insufficiency of this report requires a remand for the trial court to reconsider Guthrie’s sentence with a sufficient pre-sentence report.”
Guthrie, 689 So.2d at 947 (some emphasis omitted and some emphasis added; footnote omitted).
The presentence report presented on remand in this case is, like the report in Guthrie, perfunctory and inadequate and
“implies little, if any, attempt to subjectively evaluate [the defendant].” Guthrie, 689 So.2d at 947. The presentence report here contains almost no information about Washington’s troubled adolescence and unstable family life and its effect on him. The “Personal Relationships” section of the report reads:
“Relationship w/father: Bad
“Relationship w/ mother: Bad
“Relationship w/ siblings: Good”
The final portion of the report reads:
“Officer Remarks: None
“Recommendations to Court: None”
Among other things, the report did not discuss his mother’s abandonment of her children, Washington’s residence in a series of foster and group homes, or the absence of his father for most of his life. This is information that should have been included under Rule 26.8(b)(5)(social history and family relationships).[6]
Furthermore, the report also discloses no information about Washington’s history of mental-health problems (Rule 26.3(b)(6)). Further, it asserts that no psychological reports were available. In its ‘Written Re-Sentencing Order,” the trial court obviously relied upon this assertion, as well as on the absence of any discussion of Washington’s history of treatment at mental-health facilities. The trial court specifically noted: “[N]or is there any history of mental illness in the Pre-sentence Report.” This finding is contradicted by Washington’s testimony at the sentencing hearing that he suffered from mental problems, that he had undergone various neurological and psychological testing related to those problems, and that he had been treated at a psychiatric hospi *450 tal and a therapeutic foster home for at least six months. The presentence report should have investigated these sources and should have presented information regarding Washington’s mental health. Rule 26.3.(b)(6).
The deficiencies of the presentence report appear to make it as much of a perfunctory presentence report as the report criticized in Guthrie, if not more so. It appears likely that the deficiencies in the report may indeed have “hamstrung the trial court in considering the full mosaic of [Washington’s] background and circumstances.” 689 So.2d at 947.
We are not suggesting that the adequacy of the presentence report should be evaluated in isolation. See Hart, 612 So.2d at 540 (noting that the “trial judge must consider the presentence investigation report and any evidence submitted in connection with it, in addition to the evidence presented at trial and during the sentencing hearing”). The presentence report is only part, albeit an important and required part, of the information on which the trial court should base its sentencing decision. In the present case, the presen-tence report failed to address Washington’s troubled adolescence, his unstable family life, and his mental-health problems. It is apparent that the trial court relied at least in part on the presentence report in not finding the existence of any nonstatutory mitigating circumstances and, ultimately, in deciding that death was the appropriate sentence in this case.

IV. Conclusion

Based on the foregoing, we reverse the judgment of the Court of Criminal Appeals and remand the case for further proceedings consistent with this opinion.[7]
REVERSED AND REMANDED.
WOODALL, STUART, PARKER, and MAIN, JJ., concur.
BOLIN, J., dissents in part and concurs in the result.
COBB, C.J., and SHAW and WISE, JJ., recuse themselves.[8]

. Washington testified that he underwent daily counseling and therapy sessions while at Hillcrest Hospital.

. The State's reliance on McWilliams and Ex parte Land, 678 So.2d 224 (Ala.1996), is misplaced. In McWilliams, this Court remanded ' the case for the trial judge to state whether the judge did or did not consider victim-impact statements when deciding on a sentence. In the present case, the jury heard the victim-impact testimony at issue, and the trial judge stated that she would consider it. In Ex parte Land, this Court found no reversible error where the trial judge read letters from members of the victim’s family and from members of the defendant's family, some of which expressed opinions as to the appropriate pun *447 ishment. As in McWilliams, however, the letters were not read to a jury; they were read only by the judge and only "out of a respect for the families and for the limited purpose of possibly establishing a mitigating factor....” Land, 678 So.2d at 237. In the present case, no such limitations are involved and the testimony of the victim’s parents was presented to the jury.

. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (holding that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt”).

. Eighteen years is the minimum age at which the death penalty can be imposed. See Roper v. Simmons, 543 U.S. 551, 574, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

. The Committee Comments to Rule 26.3(b) refer to that rule as one that "sets forth what information the presentence report should contain.”

. In response to the objection by Washington's counsel in the trial court that the pre-sentence report was "almost worthless,” the Court of Criminal Appeals "agree[d] with defense counsel that the report is not the most thorough presentence report to come before us.” 106 So.3d at 436 (opinion on return to remand).

. Because of our disposition of this case on the victim-impact-testimony issue, we preter-mit consideration of the adequacy of the Court of Criminal Appeals’ review of the aggravating and mitigating circumstances.