[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13756

_____

BRANDON WASHINGTON,

                                    Petitioner-Appellant,

*versus*

ATTORNEY GENERAL OF THE STATE
OF ALABAMA,
COMMISSIONER, ALABAMA DEPARTMENT
OF CORRECTIONS,
WARDEN, HOLMAN CORRECTIONAL FACILITY,

                                    Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:18-cv-01091-ACA-GMB

_____

Before WILSON, JILL PRYOR, Circuit Judges, and CONWAY,* District Judge.

WILSON, Circuit Judge:

Brandon Washington, an Alabama prisoner, appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. The district judge granted a Certificate of Appealability (COA) on whether trial counsel provided ineffective assistance for failing to convey to Washington a favorable plea offer of thirty years' imprisonment during his capital murder trial.

We find that Washington has shown by clear and convincing evidence that the state habeas court's determinations that Washington would not have accepted the plea offer and that the state trial court would not have accepted an agreement between Washington and the District Attorney were unreasonable. We also find that the Alabama Court of Criminal Appeal's (ACCA's) determination that Washington received the plea offer was unreasonable. Because we find that the state habeas court's factual determinations were unreasonable, Washington has cleared the hurdle created by

_____

* Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA).

Because Washington cleared the AEDPA hurdle, we could review his claim de novo, but we find it is best for the district court to conduct an evidentiary hearing on Washington's claim. Thus, we **VACATE** the district court's denial of Washington's habeas petition and **REMAND** for an evidentiary hearing.

## I.

First, we will review Washington's criminal trial and direct appeals. Second, we will address Washington's state habeas petition. Last, we will review Washington's federal habeas petition.

### A.

Alabama indicted Washington for one count of capital murder for the robbery and killing of Justin Campbell, a worker at a local RadioShack. Alabama sought the death penalty. At the time, Washington was 18 years old and a freshman at Miles College.

In January 2006, Washington proceeded to trial. After the lead detective testified, Deputy District Attorney (D.A.) Mike Anderton extended a mid-trial offer of life with parole to Washington via Washington's counsel, Emory Anthony. The trial court asked D.A. Anderton about that offer and the outcome. The following exchanged occurred:

> MR. ANDERTON: Your Honor, prior to the beginning of the proceedings this morning, I saw Mr. Anthony and I have spoken with the family of Justin

Campbell.  We extended an offer to Mr. Anthony on behalf of his client to allow Brandon Washington to plead guilty to the murder and receive a sentence of life in this case.  It was -- it is my understanding that Mr. Anthony spoke to the Defendant and spoke to, I believe the Defendant's grandmother, along with his co-counsel, Brandon Taylor, the four of them in a room, and Mr. Anthony has told me that Mr. Washington does not wish to accept that offer.

MR. ANTHONY: And for the record, that is correct.

THE COURT: And Mr. Anthony, do you believe you've had sufficient time to discuss the offer with your client, and he understands it?

MR. ANTHONY: Well, he understands, and that is why I brought his grandmother back in there.  And you know, for the record, he is saying he didn't do it. He is saying he is not guilty.

THE COURT: He pleads not guilty?

 MR. ANTHONY: Right.

THE COURT: Okay.

The trial proceeded, and the jury found Washington guilty of capital murder.  The jury recommended the death penalty, which the trial court accepted.

Washington appealed.  The ACCA overturned his death sentence and remanded the case to the trial court for resentencing,

finding it was plain error to sentence Washington without the benefit of a presentence investigation report. *Washington v. State*, 106 So. 3d 423, 432–35 (Ala. Crim. App. 2007). Again, the trial court imposed the death penalty. Washington again appealed. This time, the Alabama Supreme Court overturned his death sentence because the trial court plainly erred by admitting improper victim-impact testimony. *Ex parte Washington*, 106 So. 3d 441, 447 (Ala. 2011).

In 2012, at the third sentencing, Alabama did not seek the death penalty, and Washington received a life sentence without the possibility of parole. The ACCA affirmed.

### B.

In 2013, Washington filed his state habeas petition, alleging ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984). Alabama moved to dismiss, arguing that Washington's trial counsel could not have been ineffective because D.A. Anderton was so impressed by their performance at trial that he offered a second mid-trial plea deal of thirty years. But Washington claimed that he did not receive the offer. Although the trial record included the exchange between the state trial court, D.A. Anderton, and Anthony about the life offer, there is nothing in the record about the thirty-year plea deal. As a result, Washington amended his petition to include trial counsel's failure to communicate the plea deal in violation of *Missouri v. Frye*, 566 U.S. 134 (2012).

Washington sought an evidentiary hearing on this issue. In support, Washington submitted an affidavit from his grandmother,

Amanda Washington, who adopted Washington when he was thirteen years old and was paying for his criminal defense counsel. In the affidavit, Amanda stated:

> 3. During the trial, Mr. Anthony asked me to accompany him to a conference room off the courtroom to discuss with him and Brandon [Washington] a plea deal offered by the district attorney. Mr. Anthony said that the district attorney had offered Brandon a plea of life in prison with the possibility of parole. Brandon did not want to accept the plea offer of life and I did not attempt to persuade him to take the offer.

> 4. I recently learned from Brandon's current lawyer that during the trial the district attorney extended Brandon a plea offer through Mr. Anthony for 30 years in prison. That is the first time I had ever heard of a plea offer for 30 years. I never heard Mr. Anthony mention any plea offer other than life in prison. Based on my relationship with Brandon, I am confident that if any other offer had been communicated to him, he would have told me about it.

Washington moved to take Amanda's deposition to preserve her statement because she was in poor health. The state habeas court[1] granted Washington's motion unless the parties stipulated "for the Court to consider the content of [Amanda's] Affidavit as true." The parties agreed to the stipulation that Amanda's affidavit

---

[1] The same judge presided over Washington's criminal trial, all three sentencings, and state habeas proceedings.

is true. In light of Amanda's affidavit and the lack of discussion on the record about this other, mid-trial plea deal, the state habeas court ordered Anthony and D.A. Anderton to submit affidavits addressing whether Alabama extended the thirty-year plea deal during trial.

D.A. Anderton submitted an affidavit that said Anthony was effective at representing Washington, which led to D.A. Anderton offering a plea agreement "that involved a number of years." D.A. Anderton could not "recall the number of years offered, but recollect[ed] that the offer was for a term of less than a life."

Anthony submitted an affidavit that said D.A. Anderton "made an offer of 30 years" and that Anthony "talked with Brandon Washington and his Grandmother, [but] Brandon refused to accept the plea offer."

The state habeas court denied Washington's petition and request for an evidentiary hearing. The court acknowledged that Amanda's affidavit and Washington's petition conflicted with Anthony's and Anderton's affidavits. Despite this, the state habeas court noted that:

> [T]he record is clear that the Defendant, in the midst of being on trial in a capital murder case, wherein he faced a serious threat of conviction and the death penalty, refused an offer of Life with the possibility of parole. In fact the record is clear, and it is this Court's recollection, that the Defendant, standing in the open court with his attorney, the prosecutor, the victim's family and the press, through his attorney, maintained

his innocence to the charge. In fact, his position in rejecting the offer of settlement, was that "he is saying he didn't do it, he is saying he is not guilty."

The state habeas court also noted that there was no significant difference between life with parole and a thirty-year sentence. But the court continued:

> Regardless of whether this offer of 30 years was placed on the record, it is both Mr. Anderton's and Mr. Anthony's recollection, that *any* offer of settlement for less than Life was communicated and rejected by the Defendant. Evidence of the Defendant's position *at that time*, is made clear from the record in this case cited above. Therefore, this court does not find that [Washington] has met his burden under *Frye* of showing a "reasonable probability" that the Defendant would have accepted a thirty year offer, or that this Court would have accepted the plea agreement, after the Defendant had proclaimed his innocence in the open and very public courtroom. [Washington] has not proven counsel's performance ineffective, or that, but for [counsel's] performance, the result would have been different under *Strickland*.

Washington appealed to the ACCA. For Washington's *Frye* claim, the ACCA found that:

> Thus, the circuit court resolved the disputed issue, i.e., whether a 30-year plea offer was communicated to Washington, in the State's favor. The circuit court also found, based on the affidavits as well as its own

recollection of the proceedings, that there was not a reasonable probability that Washington would have accepted a 30-year plea offer nor that [trial judge] would have approved it. Washington points to the fact that the parties stipulated to the truth of his grandmother's affidavit. However, Ms. Washington's affidavit stated that she "never heard Mr. Anthony mention any plea offer other than for life in prison" and that based on her relationship with Washington, she was "confident" that he would have told her about any other plea offers. Thus, her testimony does not rule out the possibility that Washington may have chosen not to tell her about the offer.

★    ★    ★

The affidavits of Mr. Anthony and Mr. Anderton, though contrary to Washington's assertion in his petition, constitute sufficient evidence on which the circuit court could have based its findings, i.e., that defense counsel did in fact communicate a 30-year plea deal to Washington that he rejected. Further, the trial court did not find Washington's assertion that he would have accepted [] the plea deal to be credible. Thus, Washington failed to prove his claim that counsel rendered deficient performance under *Frye*. A petitioner must meet both prongs of *Strickland*, i.e., deficient performance and prejudice, in order to prove a claim that counsel was ineffective. Accordingly, Washington failed to meet his burden of proof and the trial court was correct to deny this claim.

Ultimately, the ACCA affirmed the state habeas court's denial of Washington's state habeas petition.

## C.

Washington filed his federal habeas petition in the Northern District of Alabama again alleging ineffective assistance of counsel based on his counsel's failure to relay a thirty-year plea offer to him. A magistrate judge recommended denying Washington's petition on the merits, explaining that Washington failed to establish deficient performance. Specifically, the magistrate judge found that "the ACCA had a reasonable justification for concluding, as it did, that the affidavits could be harmonized to find that Anthony relayed the 30-year offer to" Washington. Washington timely objected, raising a number of challenges.

The district judge agreed with Washington on just one point—the magistrate judge should have addressed the *Strickland* prejudice prong—but ultimately found that the state court's determination on that prong was reasonable. *Washington v. Marshall*, No. 2:18-CV-1091-ACA-GMB, 2021 WL 4409096, at *1 (N.D. Ala. Sept. 27, 2021). In focusing on the prejudice prong, the district court explained that the two factual determinations—that Washington would not have accepted the thirty-year offer and that the state court would not have accepted the plea agreement—were reasonable. *Id.* at *4.

But the district court granted Washington a COA on whether trial counsel provided ineffective assistance by failing to convey to Washington a favorable plea offer of thirty years'

21-13756                Opinion of the Court                11

imprisonment during his capital murder trial. *Id.* at *5. Washington timely appealed.

## II.

Because the ACCA denied Washington's ineffective assistance of counsel claims, our review is subject to AEDPA. *See Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1217 (11th Cir. 2015).

Under AEDPA, a federal court can grant relief to a state prisoner *only* if he shows that the state court's determination of his claim resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Because Washington argues that the ACCA's factual findings were unreasonable, we review only under § 2254(d)(2). A state habeas court's findings of fact are presumed to be correct and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1). When determining whether a state court's decision was based on an unreasonable determination of facts, we must focus on the particular factual reasons for "why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal citation omitted).

"Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc). "Depending on the importance of the factual error to the state court's ultimate decision, that decision might still be reasonable even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Id.* (internal quotation marks omitted). "If reasonable minds reviewing the record might disagree about the [factual] finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (cleaned up).

## III.

Washington argues that the state habeas court made three unreasonable determinations of fact about his ineffective assistance of counsel claim.

To succeed on an ineffective assistance of counsel claim, Washington must demonstrate: (1) that his lawyer rendered deficient performance, such that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and (2) that these errors prejudiced the defense, such that the "deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 687, 693.

Washington claims that his counsel was ineffective for not informing him about D.A. Anderton's mid-trial plea offer. "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. When an attorney fails to convey a plea agreement, the petitioner may be able to prove deficient performance, thus satisfying the first prong of *Strickland*. *See id.*

To satisfy the prejudice prong of *Strickland* where counsel has failed to communicate a plea offer, the petitioner must show: (1) "a reasonable probability" that the petitioner would have accepted the plea; (2) the prosecution would not have withdrawn or canceled the plea; (3) the trial court would have accepted the plea; and (4) as a result of accepting the plea, the ultimate conviction would have been for a lesser charge or sentence than what the petitioner received. *Id.* at 147; *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

Addressing the prejudice prong, Washington argues that the state habeas court unreasonably concluded that because he rejected the State's first plea offer for life imprisonment and maintained his innocence at trial, (1) he would not have accepted the thirty-year plea offer, and (2) the state trial court would not have accepted a thirty-year plea deal. And under the performance prong, Washington argues that the ACCA unreasonably concluded that Anthony communicated the thirty-year plea offer to him. We address each prong in the order Washington argued them.

### A.    Prejudice

The ACCA did not address the prejudice prong, so to conduct our review we must look to the last reasoned state court decision. *See Wilson*, 138 S. Ct. at 1192. The state habeas court's decision on this prong relied on two factual determinations. It explained that Washington failed to show a reasonable probability that Washington "would have accepted a thirty year offer," or that the state trial court "would have accepted the plea agreement, after [Washington] had proclaimed his innocence in the open and very public courtroom."

In concluding that Washington proclaimed his innocence in an open and public courtroom, the state habeas court referenced a single excerpt in the record. There, without prompting by the court, D.A. Anderton told the court that he had extended an offer of life imprisonment to Anthony, who relayed that Washington did not want to accept that offer. Anthony then explained that was correct and stated that he had sufficient time to discuss the offer with Washington. Anthony further explained that Washington understood the plea but said that "he didn't do it. He is saying he is not guilty." Washington did not say anything directly to the court.

We are tasked with determining whether it was reasonable to conclude that Washington's maintaining his innocence, through his attorney, automatically belied his claim that he would have taken the thirty-year plea offer. The Constitution affords all defendants—both at the state and federal levels—several rights during criminal prosecution, including requiring the prosecution to

prove guilt beyond a reasonable doubt. *See* U.S. Const. amends. V, XIV; *see also Taylor v. Kentucky*, 436 U.S. 478, 485–86 (1978) ("[T]he Due Process Clause of the Fourteenth Amendment must be held to safeguard 'against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.'"); *In re Winship*, 397 U.S. 358, 362 (1970) (collecting cases that show the Court "has long assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required"). It is inappropriate for courts to rely *solely* on a defendant's assertion of this right when considering whether he would have accepted a plea offer.

The Sixth Circuit, confronted with a similar situation, found that the petitioner's "declarations of innocence do not prove . . . that he would not have accepted a guilty plea." *Griffin v. United States*, 330 F.3d 733, 738 (6th Cir. 2003). In *Griffin*, the petitioner filed a habeas petition under 28 U.S.C. § 2255, arguing that he would have taken a plea agreement had one been communicated to him. *Id.* at 735. The government argued that even if the plea deal had been communicated, the record did not support that the petitioner would have taken the plea offer because of the petitioner's many protestations of his innocence. *Id.* at 738. The Sixth Circuit disagreed. *Id.* The Sixth Circuit reasoned that

> Defendants must claim innocence right up to the point of accepting a guilty plea, or they would lose their ability to make any deal with the government. It does not make sense to say that a defendant must admit guilt prior to accepting a deal on a guilty plea.

> It therefore does not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea. Furthermore, a defendant must be entitled to maintain his innocence throughout trial under the Fifth Amendment.

*Id.* Considering the record, the Sixth Circuit determined that an evidentiary hearing was necessary to determine whether the petitioner would have accepted the plea offer had he known about it. *Id.* at 739.

We found the Sixth Circuit's reasoning persuasive in *Lalani v. United States*, 315 F. App'x 858, 861 (11th Cir. 2009) (per curiam). There, the petitioners filed a habeas petition under 28 U.S.C. § 2255, arguing that their trial counsel was ineffective for failing to secure a plea agreement, and that they would have taken a plea agreement despite their claims of innocence. *Id.* at 859. To determine whether the petitioners made a viable *Strickland* claim, we relied on *Griffin*, which found it did "not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea." *Id.* at 861 (quoting *Griffin*, 330 F.3d at 738). As a result, we held that the petitioners' claims of innocence did not prevent them from showing prejudice in support of ineffective assistance of counsel claims for failing to communicate a plea offer. *Id.* Ultimately, we remanded to the district court to conduct an evidentiary hearing. *Id.* at 861–82.

Like we found in *Lalani*, we find the Sixth Circuit's reasoning persuasive and formally adopt it here. A defendant has a right to

maintain his innocence without entirely jeopardizing his ability to later claim that he would have accepted a subsequent, uncommunicated plea offer.

We hold that when a petitioner states that he would have taken a plea offer while maintaining his innocence, the state court cannot use that as the *only* factual determination to support a finding that the petitioner failed to meet the prejudice prong of *Strickland*. To be sure, those protestations of innocence are relevant to determining whether the petitioner would have accepted a plea offer and should be considered along with other facts, such as why the petitioner chose to reject other offers and the discussions that petitioner had with his counsel about those offers. As a result, this circumstance will often require an evidentiary hearing to consider those relevant facts.

In finding that Washington would not have accepted the thirty-year plea offer, the state habeas court also relied on its own assumption that Washington would not have accepted the thirty-year offer because he had previously rejected a plea offer of a sentence of life with the possibility of parole. Based on the state habeas court's calculations—and without briefing or input from the parties—the court determined that there was no significant difference between a thirty-year sentence and a sentence of life with parole. This finding was unreasonable. There was no evidence in the record to support an inference that Washington, who was an eighteen-year-old college freshman at the time of his conviction, would

have rejected a thirty-year plea offer simply because he had previously rejected an offer of life in prison.

With respect to the state habeas court's finding that the state trial court would not have accepted the thirty-year plea deal because Washington maintained his claim of innocence, this determination, too, was unreasonable.  To be sure, under Alabama law, it is within a state trial judge's discretion whether to accept or reject a plea agreement between the prosecution and a defendant. *See* Ala. R. Crim. P. 14.3(b) ("[T]he court may accept or reject the agreement or may defer its decision as to acceptance or rejection until receipt of a presentence report."). Here, though, the dispositive question is not whether *this* state habeas judge—who presided over Washington's trial, three separate sentencings following two reversals by State appellate courts, and his post-conviction proceedings one decade later—would not have accepted the District Attorney's thirty-year plea offer. The question is whether a reasonable jurist would not have accepted a thirty-year deal extended by D.A. Anderton and agreed to by Washington. It was unreasonable for the state habeas judge to rely on Washington's purported proclamation of innocence to determine, after the fact, that she would not have accepted the thirty-year deal at the time of trial.

The state habeas court relied *only* on Washington's earlier rejection of the life-with-parole plea offer and Washington's claim of innocence to support its findings that he would have also rejected a thirty-year plea offer and that the state trial court would not have accepted the plea.  Because Washington was entitled to

maintain his innocence, this reasoning supporting the state habeas court's determinations that neither Washington nor the state trial court would have accepted the plea offer was unreasonable. The state habeas court's finding that Washington's rejection of the life-with-parole offer indicated he would have also rejected the thirty-year offer because the two sentences were not significantly different was also unreasonable because it was not supported by any evidence in the record.

### B.    Deficient Performance

The ACCA explained that despite the state habeas court having to take Amanda's affidavit as true, the affidavits of Anthony and D.A. Anderton show that Washington was told about the thirty-year plea offer. Thus, the ACCA found that Washington had not shown deficient performance. Washington argues that this was an unreasonable determination of facts, and we agree.

To start, there is very little information in the record about this thirty-year plea offer. We have D.A. Anderton's affidavit establishing that the plea offer was communicated to Anthony, and Anthony's confirmation of that plea offer. Anthony then attests that he told Washington, who rejected the offer. Washington in his state habeas petition says he did not receive the plea offer. If these facts were all that we had to go on, our decision would be simple—the state court resolved conflicting accounts—and the question of deference would be straight forward. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) ("Determining the credibility of witnesses is the province and

function of the state courts, not a federal court engaging in habeas review."). But it is not all we have to go on. There is also the affidavit from Washington's grandmother, Amanda, which the parties agreed that the state habeas court should have taken as true.

Because the parties agreed that the state habeas court should take Amanda's affidavit as true, the court was not required to determine whether it believed Amanda over Anthony. Rather, the court had to accept Amanda's affidavit as true, and that requires that the court resolve any inconsistences between her affidavit and Anthony's in her favor. But the court did not do that. Instead, the court focused only on Anthony's and Anderton's affidavits to make its factual finding that Washington received and rejected the thirty-year plea offer.

In reviewing the state habeas court's holding, the ACCA focused on the fact that Amanda's affidavit did not "rule out the possibility that Washington may not have chosen to tell her about the offer." However, the ACCA's reasoning misses the mark and, in fact, showcases that the affidavits truly contradict each other.

As we noted above, Amanda's affidavit said that she "never heard Mr. Anthony mention any plea offer other than life." Doc. 1-23 at 42. Now, this statement alone is not enough to show that the ACCA made an unreasonable determination about whether Washington told Amanda about the plea offer. But consider how this compares to Anthony's affidavit, where he claimed that he "talked with Brandon Washington *and* his Grandmother" about the thirty-year plea offer. Anthony's affidavit clearly indicates

that—if at all—he told Washington and Amanda *together* about the thirty-year plea offer.  So whether Washington told Amanda about the plea offer separately is irrelevant.  Anthony averred that he told Washington *and* Amanda, and Amanda—whose affidavit the state court was bound to consider as truthful—said she never heard anything about a thirty-year plea offer.  Thus, the record does not support the ACCA's factual finding that Amanda may not have heard about the plea deal simply because Washington may not have chosen to tell her.

The ACCA used that finding alone to support its determination that Anthony told Washington about the thirty-year plea offer.  Because that factual determination is not supported by the record and is clearly erroneous, the ACCA's determination that Washington received the plea offer was unreasonable.

## IV.

Because Washington has established that the state courts made unreasonable determinations of the facts, 28 U.S.C. § 2254(d)(2), he has overcome AEDPA deference.  Thus, we must review de novo whether Washington has shown that his counsel was ineffective under *Strickland*.  But we are reluctant to do so in the first instance for two reasons.  First, as discussed above, Washington's protestations of innocence cannot be considered in a vacuum but should be evaluated with his reasons for why he did not take the prior plea, why he would have taken the thirty-year plea, and any relevant information from Anthony.  Second, even though Amanda's affidavit is to be taken as true, there is very little evidence

from Anthony and Washington about this second plea offer. To properly consider Washington's claim that he never received the thirty-year plea offer and he would have accepted it had Anthony communicated it with him, there needs to be factual development from Washington and Anthony about their attorney-client relationship, their communication, and the thirty-year plea offer.

Washington has repeatedly requested an evidentiary hearing, and in light of him clearing the AEDPA hurdle, he should be given an opportunity to present his evidence. *See Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1248–49 (11th Cir. 2014).

## V.

We vacate the district court's order denying Washington's habeas petition and its order denying an evidentiary hearing. We remand this case to the district court for an evidentiary hearing and to consider Washington's *Strickland* claim de novo.

**VACATED and REMANDED.**