[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13756

_____

BRANDON WASHINGTON,

Petitioner-Appellant,

*versus*

ATTORNEY GENERAL OF THE STATE
OF ALABAMA,
COMMISSIONER, ALABAMA DEPARTMENT
OF CORRECTIONS,
WARDEN, HOLMAN CORRECTIONAL FACILITY,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:18-cv-01091-ACA-GMB

————————————

Before WILSON, JILL PRYOR, Circuit Judges, and CONWAY,* District Judge.

WILSON, Circuit Judge:

We grant the Attorney General of Alabama's petition for panel rehearing. We vacate and withdraw our previous opinion dated July 28, 2023, 75 F.4th 1164 (11th Cir. 2023), and substitute the following opinion.

★    ★    ★

Brandon Washington, an Alabama prisoner, appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. The district judge granted a Certificate of Appealability (COA) on whether trial counsel provided ineffective assistance for failing to convey to Washington a favorable plea offer of thirty years' imprisonment during his capital murder trial.

Because there is a potential justification for the Alabama Court of Criminal Appeal's (ACCA's) conclusion that Washington

---

* Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

was told about the thirty-year plea offer, that determination was not unreasonable.  Thus, we affirm.

## I.

First, we will review Washington's criminal trial and direct appeals.  Second, we will address Washington's state habeas petition.  Last, we will review Washington's federal habeas petition.

### A.

Alabama indicted Washington for one count of capital murder for the robbery and killing of Justin Campbell, a worker at a local RadioShack.  Alabama sought the death penalty.

In January 2006, Washington proceeded to trial.  After the lead detective testified, Deputy District Attorney (D.A.) Mike Anderton extended a mid-trial offer of life with parole to Washington via Washington's counsel, Emory Anthony.  The trial court asked D.A. Anderton about that offer and the outcome, in which he said that he spoke with Anthony to convey "sentence of life in this case."  D.A. Anderton and Anthony confirmed that Washington did not want to accept the offer.  Anthony stated that Washington said, "he didn't do it," saying that "he is not guilty."

The trial proceeded, and the jury found Washington guilty of capital murder.  The jury recommended the death penalty, which the trial court accepted.

Washington appealed.  The ACCA overturned his death sentence and remanded the case to the trial court for resentencing, finding it was plain error to sentence Washington without the

benefit of a presentence investigation report. *Washington v. State*, 106 So. 3d 423, 432–35 (Ala. Crim. App. 2007). Again, the trial court imposed the death penalty. Washington again appealed. This time, the Alabama Supreme Court overturned his death sentence because the trial court plainly erred by admitting improper victim-impact testimony. *Ex parte Washington*, 106 So. 3d 441, 447 (Ala. 2011).

In 2012, at the third sentencing, Alabama did not seek the death penalty, and Washington received a life sentence without the possibility of parole. The ACCA affirmed.

### B.

In 2013, Washington filed his state habeas petition, alleging ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984). Alabama moved to dismiss, arguing that Washington's trial counsel could not have been ineffective because D.A. Anderton was so impressed by their performance at trial that he offered a second mid-trial plea deal of thirty years. But Washington claimed that he did not receive the offer. Although the trial record included the exchange between the state trial court, D.A. Anderton, and Anthony about the life offer, there is nothing in the record about the thirty-year plea deal. As a result, Washington amended his petition to include trial counsel's failure to communicate the plea deal in violation of *Missouri v. Frye*, 566 U.S. 134 (2012).

Washington sought an evidentiary hearing on this issue. In support, Washington submitted an affidavit from his grandmother, Amanda Washington, who adopted Washington when he was

thirteen years old and was paying for his criminal defense counsel. In the affidavit, Amanda stated that she never "heard of a plea offer for 30 years" and that "Anthony [never] mention[ed] any plea offer other than for life in prison." Amanda also stated that she was "confident that if any other offer had been communicated to him, he would have told me about it."

Washington moved to take Amanda's deposition to preserve her statement because she was in poor health. The state habeas court[1] granted Washington's motion unless the parties stipulated "for the Court to consider the content of [Amanda's] Affidavit as true." The parties agreed to the stipulation that Amanda's affidavit is true. In light of Amanda's affidavit and the lack of discussion on the record about this other, mid-trial plea deal, the state habeas court ordered Anthony and D.A. Anderton to submit affidavits addressing whether Alabama extended the thirty-year plea deal during trial.

D.A. Anderton submitted an affidavit that said Anthony was effective at representing Washington, which led to D.A. Anderton offering a plea agreement "that involved a number of years." D.A. Anderton could not "recall the number of years offered, but recollect[ed] that the offer was for a term of less than a life sentence."

Anthony submitted an affidavit that said D.A. Anderton "made an offer of 30 years" and that Anthony "talked with Brandon

---

[1] The same judge presided over Washington's criminal trial, all three sentencings, and state habeas proceedings.

Washington and his Grandmother, [but] Brandon refused to accept the plea offer."

The state habeas court denied Washington's petition and request for an evidentiary hearing. The court acknowledged that Amanda's affidavit and Washington's petition conflicted with Anthony's and Anderton's affidavits. But then the state habeas court noted that:

> Regardless of whether this offer of 30 years was placed on the record, it is both Mr. Anderton's and Mr. Anthony's recollection, that *any* offer of settlement for less than Life was communicated and rejected by the Defendant. Evidence of the Defendant's position *at that time*, is made clear from the record in this case cited above. Therefore, this court does not find that [Washington] has met his burden under *Frye* of showing a "reasonable probability" that the Defendant would have accepted a thirty year offer, or that this Court would have accepted the plea agreement, after the Defendant had proclaimed his innocence in the open and very public courtroom. [Washington] has not proven counsel's performance ineffective, or that, but for [counsel's] performance, the result would have been different under *Strickland*.

Washington appealed to the ACCA. For Washington's *Frye* claim, the ACCA found that:

> Thus, the circuit court resolved the disputed issue, i.e., whether a 30-year plea offer was communicated to Washington, in the State's favor. The circuit court

also found, based on the affidavits as well as its own recollection of the proceedings, that there was not a reasonable probability that Washington would have accepted a 30-year plea offer nor that [the trial judge] would have approved it. Washington points to the fact that the parties stipulated to the truth of his grandmother's affidavit. However, Ms. Washington's affidavit stated that she "never heard Mr. Anthony mention any plea offer other than for life in prison" and that based on her relationship with Washington, she was "confident" that he would have told her about any other plea offers. Thus, her testimony does not rule out the possibility that Washington may have chosen not to tell her about the offer.

⋆　　⋆　　⋆

The affidavits of Mr. Anthony and Mr. Anderton, though contrary to Washington's assertion in his petition, constitute sufficient evidence on which the circuit court could have based its findings, i.e., that defense counsel did in fact communicate a 30-year plea deal to Washington that he rejected. Further, the trial court did not find Washington's assertion that he would have accepted [] the plea deal to be credible. Thus, Washington failed to prove his claim that counsel rendered deficient performance under *Frye*. A petitioner must meet both prongs of *Strickland*, i.e., deficient performance and prejudice, in order to prove a claim that counsel was ineffective. Accordingly, Washington failed to meet his burden of proof and the trial court was correct to deny this claim.

Ultimately, the ACCA affirmed the state habeas court's denial of Washington's state habeas petition.

## C.

Washington filed his federal habeas petition in the Northern District of Alabama again alleging ineffective assistance of counsel based on his counsel's failure to relay a thirty-year plea offer to him. A magistrate judge recommended denying Washington's petition on the merits, explaining that the state court's determination that Washington failed to establish deficient performance was reasonable. Washington timely objected.

Rather than focusing on the deficient performance prong, the district judge focused on the prejudice prong, finding that the state court's determination on that prong was reasonable. *Washington v. Marshall*, No. 2:18-CV-1091-ACA-GMB, 2021 WL 4409096, at *1 (N.D. Ala. Sept. 27, 2021). The district court explained that the two factual determinations—that Washington would not have accepted the thirty-year offer and that the state court would not have accepted the plea agreement—were reasonable. *Id.* at *4.

The district court granted Washington a COA on whether trial counsel provided ineffective assistance by failing to convey to Washington a favorable plea offer of thirty years' imprisonment during his capital murder trial. *Id.* at *5. Washington timely appealed.

## II.

Because the ACCA denied Washington's ineffective assistance of counsel claims, our review is subject to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA). *See Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1217 (11th Cir. 2015).

Under AEDPA, a federal court can grant relief to a state prisoner *only* if he shows that the state court's determination of his claim resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Because Washington argues that the ACCA's factual findings were unreasonable, we review only under § 2254(d)(2). A state habeas court's findings of fact are presumed to be correct and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

"Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc). "Depending on the importance of the factual error to the state court's ultimate decision, that decision might still be

reasonable even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Id.* (internal quotation marks omitted). Ultimately, *Pye* requires us to look at "the *reasons* for the state court's decision" and then "consider any potential *justification* for those reasons." *Id.* at 1036.

## III.

To succeed on an ineffective assistance of counsel claim, Washington must demonstrate: (1) that his lawyer rendered deficient performance, such that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and (2) that these errors prejudiced the defense, such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694.

Washington claims that his counsel was ineffective for not informing him about D.A. Anderton's mid-trial plea offer. "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. When an attorney fails to convey a plea agreement, the petitioner may be able to prove deficient performance, thus satisfying the first prong of *Strickland*. *See id.* at 147.

Under the performance prong, Washington argues that the ACCA unreasonably concluded that Anthony communicated the

thirty-year plea offer to him. In its opinion, the ACCA explained that despite the state habeas court having to take Amanda's affidavit as true, the affidavits of Anthony and D.A. Anderton show that Washington was told about the thirty-year plea offer. The ACCA focused on the fact that Amanda's affidavit did not "rule out the possibility that Washington may have chosen not to tell her about the offer." The ACCA thus found that Washington had not shown deficient performance.

Although we are skeptical of the ACCA's conclusion, we are bound by AEDPA and circuit precedent in determining whether there was any potential justification for this conclusion. To start, we look to three affidavits and Washington's Rule 32 amended petition. First, D.A. Anderton's affidavit established that the plea offer was communicated to Anthony and Washington. Second, Anthony attested that he told Washington and Amanda about the plea offer. Both affidavits explain that Washington rejected the plea offer. But in his Rule 32 amended petition, Washington said he never received the plea offer and had he received it, he would have accepted it. Lastly, Amanda attested that she "never heard Mr. Anthony mention any plea offer other than for life in prison." Amanda also stated that had Anthony communicated the plea offer to Washington, she was confident that Washington would have told her about it.

There are two ways to read Anthony's affidavit. First, it could be interpreted that Anthony told both Washington and Amanda about the plea at the same time. But this interpretation is

contradicted by Amanda's affidavit because she claims to not have heard the offer. The second interpretation is that Anthony told Washington and Amanda *separately* about the plea offer, which is also in line with the ACCA's conclusion. While Amanda's affidavit, taken as true, also discounts Anthony's narrative, it does not foreclose the possibility that the plea offer was still communicated to Washington without Amanda present. D.A. Anderton's affidavit also supports this interpretation. And while Amanda claims she is confident Washington would have told her about the plea, as the ACCA noted, it cannot "rule out the possibility that Washington may have chosen not to tell her." This is not conclusive enough to discount Anthony and D.A. Anderton's affidavits that Washington was informed about the offer. Therefore, there is potential justification for the ACCA's conclusion, and we must defer to this interpretation.

Because Washington has failed to show that the ACCA's conclusion that he received the thirty-year plea offer was unreasonable, we need not address his prejudice argument.[2] *See Strickland*, 466 U.S. at 697 (explaining that a court considering an ineffectiveness claim need not "address both components of the inquiry if the

---

[2] Had Washington successfully met the performance prong, he would need to satisfy the prejudice prong of *Strickland* and show "a reasonable probability" that: (1) he would have accepted the plea; (2) the prosecution would not have withdrawn or canceled the plea; (3) the trial court would have accepted the plea; and (4) as a result of accepting the plea, the ultimate conviction would have been for a lesser charge or sentence than what he received. *Frye*, 566 U.S. at 147; *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

21-13756                Opinion of the Court                13

defendant makes an insufficient showing on one"); *see also Conner v. GDCP Warden*, 784 F.3d 752, 766–67 (11th Cir. 2015) (following *Strickland* and only addressing one prong because it disposed of the petitioner's claim).

## IV.

Because there is a potential justification for the ACCA's conclusion that Washington was told about the thirty-year plea offer, AEDPA and our precedent require that we affirm the district court's order denying Washington's habeas petition and its order denying an evidentiary hearing.[3]

**AFFIRMED.**

---

[3] Because Washington has not cleared the AEDPA hurdle, he cannot show that he is entitled to an evidentiary hearing. *See Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1248–49 (11th Cir. 2014).